In the Matter of ASA L. CARTER, an Attorney, Respondent.

Attorney at law disbarred — failure to obey order in summary proceedings directing payment of moneys withheld from clients.

Attorney at law disbarred for failing to obey an order of the Supreme Court entered in summary proceedings instituted against him by his clients to compel the payment of moneys withheld under unconscionable and void agreements of retainer.

First Department, May, 1917.　　　　[Vol. 177.

It is the duty of an attorney to obey forthwith an order directing him to pay over to his clients moneys wrongfully withheld from them, and not to wait until he is coerced into so doing by threat of imprisonment or by the menace of disciplinary proceedings, especially where such order has been passed upon and confirmed by the appellate courts.

DISCIPLINARY proceedings against an attorney instituted by the Association of the Bar of the City of New York.

*Theodore L. Waugh,* of counsel [*Einar Chrystie,* attorney], for the petitioner.

*Asa L. Carter,* respondent in person.

CLARKE, P. J.:

The respondent was admitted to the bar in this State in 1907. In 1913 he went to Pennsylvania, where he has since resided and been admitted to practice on the basis of his membership in the New York bar. The gravamen of the charges contained in the petition is that the respondent, while practicing in this State, failed to obey an order of the Supreme Court entered in summary proceedings instituted against him by his clients, the Misses Louise and Amelia Peters, to compel the payment of moneys withheld under unconscionable agreements of retainer, and left the jurisdiction so that the order could not be enforced.

In January, 1909, the respondent was retained by Louise and Amelia Peters to bring an action against their brother, William H. Peters, to establish certain alleged undivided interests in real property. By the terms of the respective retainers, which were in writing, the respondent was to receive a contingent fee of twenty per cent of any moneys or property recovered in the action. He thereupon commenced and prosecuted the action pursuant to the retainers, and likewise performed other legal services in behalf of his clients. In August, 1909, he demanded additional compensation for his services, and on September fourteenth procured them to sign second retainer agreements providing in part that the respondent " shall have as his lawful and just compensation over and above what has herebefore been agreed upon, the sum of ten ($10) per hour for the time which he has herebefore or here-

after will put in on the case of Amelia Peters and Louise Peters against William H. Peters and Isabella Widder, and that evidence of the amount of time put in shall be duly, fully, sufficiently and conclusively established by a statement of the said time in writing subscribed and sworn to by " the respondent. The agreement also contained a waiver by the respondent, under certain conditions, of his right to enforce the payment of such compensation until after the death of the survivor of Amelia Peters and Louise Peters.

In November, 1910, the respondent procured two further agreements from his clients, providing in substance: "I, Louise (or Amelia) Peters, in consideration of the services my attorney, Asa L. Carter, has rendered me and will render for me hereby agree to pay him at least five dollars an hour for the time he has and will put in for me in any manner whatsoever, and the amount will be due and payable as soon as the time has been put in, and his affidavit or other statement on oath as to the amount of time put in shall be conclusive evidence and proof of the same."

The litigation commenced by the respondent was settled in March, 1911, when the respondent received from William H. Peters for his clients $7,000 in cash and two notes of $500 each. Louise Peters had meanwhile advanced to the respondent at various times and in various amounts sums aggregating $1,500, for which she held his promissory note, together with certain collateral, and Amelia Peters had likewise advanced $14.25 for disbursements. Upon the settlement of these actions a dispute arose as to the sum which the respondent was entitled to retain in payment for his services, which dispute resulted in the commencement of summary proceedings against the respondent in the Supreme Court. A reference was ordered in the said proceeding to determine the amount due to the respondent for his services and the amounts due by him to his clients, the respondent admitting a liability of only $4,000, which he paid in September, 1911, after the commencement of the summary proceeding.

It appears that the Peters sisters were elderly and feeble women, one a cripple, the other very deaf, and that both were uneducated and inexperienced in business and legal matters.

First Department, May, 1917.          [Vol. 177.

The referee found that under the circumstances disclosed the retainer agreements of September, 1909, and November, 1910, were against public policy, vicious and absolutely void. He accordingly found that the respondent had withheld and was still withholding from Louise Peters, $2,343.96, and from Amelia Peters, $819.42 over and above the amount due him for services. The court at Special Term confirmed the report of the referee, and by order dated July 10, 1912, directed the respondent to make payments accordingly with interest, and also to pay the costs of the proceeding, $716.55. Successive appeals were taken by the respondent to this court and the Court of Appeals, which resulted in the affirmance of the order of the Special Term in both courts. (*Peters* v. *Peters*, 153 App. Div. 901; 209 N. Y. 538.)

It thus appears that during the entire pendency of the summary proceeding, and until the final determination of the appeal by the Court of Appeals, about June 20, 1913, the respondent withheld all the money received on the settlement with the exception of $4,000, which he paid to his clients on September 13, 1911, as above stated. In respect to the sum finally adjudged to be due by him, the respondent made no payments on account of the same until some time subsequent to the commencement of the present proceeding, when, at various times in 1916, he made cash payments aggregating $1,536.29, and gave his clients four promissory notes aggregating $2,841.01, indorsed by his brother and payable in one, two, three and four years, respectively. While these notes do not mention interest, the respondent testified that it was his understanding that interest attached as a matter of law, and that it was his intention to pay interest. Nothing appears as to the financial responsibility of either the respondent or his brother.

That the agreements exacted by the respondent from the Peters sisters were unconscionable and void, and that summary proceedings would lie to compel him to pay over such moneys as were wrongfully withheld, has already been finally adjudicated by the Court of Appeals upon the respondent's appeal to that court in the proceeding itself. The right of a client to compel an attorney to pay over moneys received in a profes-

sional capacity and wrongfully retained has been more recently declared in *Matter of Papa* v. *Rini* (171 App. Div. 796; affd., 219 N. Y. 575). As to the respondent's claim that he was at liberty to disregard the summary order until it was properly executed against him, we are fully in accord with the conclusion of the learned official referee that "Where an attorney is the object of such a mandate, especially passed upon and affirmed by appellate courts, it is his duty to obey it forthwith, and not wait until he is coerced into so doing by threat of imprisonment, or by the menace of disciplinary proceedings. And respondent's failure to obey this order for three years, and then doing so only by a settlement subsequent to the commencement of this proceeding, and then not in accordance with the requirements of the order, but by a series of notes, constitutes a violation of his duty towards the court and his clients which is not to be overlooked by this court."

The official referee has reported the proof, in his opinion, to be insufficient to establish that the respondent left the State with the intent to evade or avoid the enforcement of the summary order in question, and we agree with this conclusion. Concurrently with the petitioner's motion upon the referee's report, a motion was made by the respondent to dismiss the present proceeding as violative of the Fourteenth Amendment of the Federal Constitution. The affidavit submitted in support of such motion is devoid of fact or argument indicating the most remote invasion of the respondent's constitutional rights. That motion, therefore, should be denied. The learned official referee has found, and we think correctly, that respondent has been guilty of gross professional misconduct: " (1) In having procured improper and unprofessional agreements from helpless and ignorant women clients; (2) in improperly withholding for about three years after the final affirmance of the order of July 10th, 1912, the moneys therein directed to be paid by him to his clients; (3) in not giving his clients credit for the sums advanced by them until and as required to do so by said order; (4) in not complying for about three years after its affirmance with the terms of said order, and then after the commencement of the present proceeding inducing his clients to accept a settlement not in accordance with the terms of the

order, but in evasion thereof by giving notes payable in one, two, three and four years, for the payment of which there is no adequate security or assurance."

We are of the opinion that such misconduct demonstrates that respondent should not be allowed to continue longer in the practice of the law in this State. He has clearly violated his duty to his clients, to whom he owed the utmost good faith. He should, therefore, be disbarred.

LAUGHLIN, SCOTT, SMITH and SHEARN, JJ., concurred.

Respondent disbarred. Order to be settled on notice.