In the Matter of CORNELIUS J. EARLEY, an Attorney, Respondent.

First Department, July 3, 1919.

Attorney at law — careless use of money of clients — disbarment — conversion and concealment of money belonging to clients — effect of partial payment by attorney after institution of disciplinary proceedings.

The conduct of an attorney in borrowing moneys from clients without security, and in obtaining large sums from them for the ostensible purpose of paying off mortgages and taxes on their property and immediately thereafter using portions thereof for his own purposes and then by personal importunities transferring the obligation into the shape of personal loans, without security and often without written acknowledgments, indicates a failure to realize professional obligations, and a careless use of the money of others which will not be approved by the court.

Attorney at law disbarred for concealment of the collection of moneys belonging to his clients and deceit in regard thereto and for conversion.

Such conduct by an attorney is not to be palliated because of his pecuniary necessities nor condoned by partial payment after the institution of disciplinary proceedings.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie,* for the petitioner.

*Terence J. McManus* of counsel [*Olcott, Bonynge, McManus & Ernst,* attorneys], for the respondent.

CLARKE, P. J.:

The respondent was admitted to the bar in April, 1892, at a General Term of the Supreme Court held in the county of New York and has been and is now practicing as such in the First Judicial District.

Three sets of charges of unprofessional conduct have been preferred against him. The original charge was to the effect that the respondent converted to his own use $679, being part of certain rents which he collected while acting as attorney and agent for the Misses McGinnis, two women clients who owned certain real property in New York, and

that he failed to account for the moneys in connection with his management of their real estate. As to these charges the learned official referee has reported that the credit which respondent claimed in his accounts for $671.25 was the result of an honest mistake. The referee states: "After a careful consideration of the respondent's explanation, in the light of the testimony of Miss Rose McGinnis to the effect that she believes the two errors were honest mistakes, and taking into consideration the circumstances and the reasonable probabilities, I am of the opinion that the errors in Petitioner's Exhibit 4 were not placed there by the respondent with the intention to deceive but that they were inadvertent mistakes, and that the evidence will not justify a conclusion that in what he did he was guilty of misappropriating the $671.25. I find that the charge set forth in the original petition is not sustained."

While we do not differ with the conclusion above set forth, the conduct of the respondent in dealing with these two ladies in borrowing moneys from them without security, and in obtaining large sums from them for the ostensible purpose of paying off mortgages and taxes on their property, and immediately thereafter using portions thereof for his own purposes and then by personal importunities transferring the obligation into the shape of personal loans, without security and often without written acknowledgments, indicates a failure to realize professional obligations, and, to put it as mildly as possible, a careless use of the money of others which cannot meet our approval.

While the original charges were pending two supplemental charges were submitted and referred to the same referee. The second charge affects respondent's professional relations with one Emma H. Weiss, who was injured by a street car in Hoboken, N. J. The facts as stated by the learned referee are substantially as follows: The respondent caused an action for damages to be brought in New Jersey and procured the services of Hon. William H. Seufert as attorney to act in the matter. The case was tried resulting in a verdict for the complainant in the sum of $5,000 and in March, 1913, the Public Service Corporation of New Jersey, the defendant in the action, paid in satisfaction of the judgment the sum of

$5,250 to the attorney of record, who after deducting his fee therefrom paid over to the respondent on March 29, 1913, the sum of $4,666.66. The respondent's agreement with Mrs. Weiss entitled him to thirty-three and one-third per cent of the recovery, and after deducting his share the balance thereof due Mrs. Weiss amounted to about $3,500. It was not until October, 1915, two years and six months after he had received the money, that respondent disclosed to Mrs. Weiss or her husband, although they frequently inquired as to the status of the case, that he had received the money in satisfaction of the judgment and this information was not given until Mrs. Weiss had learned from other sources that the judgment had been satisfied. On October 16, 1915, the respondent paid to his client the sum of $3,000 in cash and gave her a note for two months for $1,013.87, the total thereof being the amount due Mrs. Weiss with interest at six per cent from the time of the recovery of the judgment to the date of payment to her by the respondent. When the note became due he gave her a new note for $1,000 and paid the difference with interest in cash. When the second note came due he paid off $200 with interest and gave a third note for $800. When the third note came due the respondent asked Mrs. Weiss for a further extension which she refused to grant and thereupon charges against the respondent were filed with the petitioner. The respondent's explanation is as follows: " I had had with me for some time a gentleman named Solomon J. Bischoff, associated with me  *  *  *. And I agreed to pay him a salary and give him a percentage of any business that came in  *  *  *. Whenever there was an amount due him, and if it was an accommodation to me to hold that check or if I did not have funds to meet it I gave him the check and that ended the transaction so that that showed the amount due from me to him. And at that time that I received this check from Judge Seufert he was holding $2,781.63 of my checks and he had agreed that those checks would be only deposited when I notified him  *  *  *. The next morning after I made this deposit he went down to the Metropolitan Bank and he deposited these entire set of checks that he had in his own account. I learned it the next morning on the second of April. I went into the bank to fix the amount

of the balance that I had on hand so as to draw her check, to make out her check and to know the exact condition of my account and the adjuster said that he could not — that I could not draw any check for that amount, that Mr. Bischoff had come downstairs and deposited these checks for $2,781. * * * I went upstairs and * * * demanded that he refund and he refused. He said that he needed his money and he refused. That put me in a position where I was unable to give Mrs. Weiss her check." The learned official referee says: " It was the respondent's duty to promptly advise his client of the facts and use his best endeavors to pay her the money he had received for her account * * *. In neglecting as he did to acquaint Mrs. Weiss with the facts in a reasonable time — for example, within one week at the most — he fell far short of meeting the true ethical standard of the legal profession. His conduct in this respect was clearly unprofessional and I so find."

In our opinion the evidence fully sustains the charge of conversion. It is conceded that on March 31, 1913, respondent collected $4,666.66 in satisfaction of the judgment which had been recovered. The complaining witness and her husband both testified that in April, 1913, after this money had been collected, the respondent called at their house and stated that defendant had appealed the case to Trenton. Her husband testified that he made inquiries during 1913 and 1914, endeavoring to obtain information in regard to the progress of the case and he was informed that there had been delays by reason of the court vacation and that they would have to wait for a while longer. The complaining witness testified that the respondent admitted that he had used the money. That he repeatedly stated between March, 1913, and October, 1915, that the case was still pending on appeal. The respondent himself testified: " So I did not communicate with her or inform her that the money had been paid. Her husband then came down to see me in the fall and I told him that the matter had been delayed and I said nothing about — any delay having taken place. I simply told him that the matter was delayed and he incidentally remarked himself that he saw in the press that there was a long delay in Jersey and he could understand the matter, so that ended the situation."

In reference to the excuse presented by the respondent in regard to Bischoff having obtained $2,781.83 by the deposit of his checks as against his account, even if that be so there was left a balance of almost $2,000 of the moneys collected in behalf of Mrs. Weiss. When respondent was asked why he did not send a check to her for part of this money he testified that he had made other withdrawals himself. The respondent was only entitled to one-third of the proceeds and if he had withdrawn the money to which he was entitled, $1,555.50, he would still have been able to send his client a substantial check.

It is clearly established that the respondent converted his client's money to his own use; that for a long space of time he concealed from her the fact that the judgment had been paid and that at the time of the hearing he still owed a substantial amount thereof. There can be no question but that he was guilty of gross professional misconduct.

The further charge was that in September, 1912, Pauline Georgens retained the respondent to recover damages for injuries she received as the result of an accident and that he should receive as compensation fifty per cent of the amount recovered. The case was settled on the 31st day of March, 1916, the respondent receiving in settlement the sum of $500. He informed his client of the receipt of this money and requested her to wait five or six weeks for the payment of her share as he was in need of the money for use in his personal affairs. She made no objection to the respondent's proposal. Upon the expiration of the six weeks Mrs. Georgens called upon the respondent and asked for the $250 due her. The respondent stated his inability to pay the money and gave her his check for $250 which he told her to hold as evidence of the indebtedness until he had sufficient funds to cash it. He never notified her that he had funds with which to cash the check. In August, 1916, Mrs. Georgens made a further demand for the money due her. On this occasion the respondent gave her his personal note payable on demand for the sum of $255, being the amount due her, plus interest and carfare, as asserted by the respondent. In January, 1917, the respondent paid $150 on account of the indebtedness. Thereafter Mrs. Georgens, through the Legal Aid Society,

brought an action against the respondent to recover the balance due her and also called his conduct to the attention of the petitioner. On October 31, 1917, two days after the service of the petition in this proceeding, the respondent paid the balance due to his client.

The learned referee has reported that " in the circumstances, it requires no discussion of the testimony to show that the state of facts is such as to necessarily point to the conclusion that the handling of the business by the respondent falls far short of meeting the ethical standard required of lawyers in the practice of their profession. In my opinion the respondent is guilty as charged in the petition."

It appears that at the time the respondent induced Mrs. Georgens to authorize him to use her money there was pending against him proceedings in the Appellate Division in which he was charged with unprofessional conduct. The record disclosed an utter disregard by the respondent of his professional obligations in regard to his clients and their money. Upon the very day that he claims Mrs. Georgens consented to loan him the $250 belonging to her in his possession he wrote to Mrs. Weiss, referring to the notes which he had given her and said, " I am sending you check for four months' interest to April 16, 1916, on my note. I will be unable to meet it on the 16th of April, and, therefore, am compelled to ask you for one more extension of time." It would appear, therefore, that the respondent knew that at the time he claims he induced Mrs. Georgens to loan him the money he could not repay it at the end of the five or six weeks as he then promised.

The record also shows that on said March 30, 1916, there were several judgments outstanding against the respondent unsatisfied of record.

The respondent has been long at the bar and has submitted a number of letters as to his good character. The record establishes beyond question concealment of the collection of moneys belonging to his clients and deceit in regard thereto, in order to cover up the unlawful use of funds belonging to them and not to him. Such conduct is not to be palliated because of his pecuniary necessities nor condoned by partial payment after the institution of disciplinary proceedings.

Preservation of the standard of the profession and the security of the community require stern condemnation by this court. Respondent is, therefore, disbarred.

LAUGHLIN, DOWLING, PAGE and MERRELL, JJ., concurred.

Respondent disbarred. Order to be settled on notice.