### In re DICK.

No. 23134.    Oct. 31, 1933.

A. W. Trice, D. A. Richardson, and R. H. Brown, for State Bar of Oklahoma.

H. O. Bland, W. C. Peters, and Eldon J. Dick, for respondent.

McNEILL, J. This action involves an accusation filed against R. M. Dick, respondent, herein, a member of the State Bar of Oklahoma, filed before the administrative committee for section 21 of the State Bar of Oklahoma. The charge is as follows:

"The said R. M. Dick has been guilty of the violation of the oath taken by him upon his admission to the Bar of the state of Oklahoma, and has been guilty of a willful violation of the duties of an attorney and counsellor, and has been guilty of such course of conduct as is calculated to render him an unfit, unsafe, and untrustworthy person to be entrusted with the powers, responsibilities, and duties of an attorney and counsellor at law, and while standing in the confidential relationship of attorney and/or counsellor with a certain client hereinafter named, he failed to exercise, manifest, and disclose to and on behalf of said client that entire devotion to the interest of his said client and that warm zeal in the protection of the faith and confidence imposed in him by said client, which the rules and canons of professional and ethical conduct of a lawyer and counsellor require. * * *"

Respondent filed a general denial to this accusation, and hearings were had before said administrative committee on October 1, 1930, and December 4, 1930. The administrative committee made its findings and recommendations on January 22, 1931, to the effect that respondent was guilty as charged, and recommended to the Board of Governors his suspension as an attorney at law for the period of two years.

Thereafter a second accusation was filed against respondent before the same committee for alleged breach of professional conduct growing out of the hearings had before the committee upon the first accusation. Hearings were had upon this second accusation on April 9, 1931, and on May 21, 1931. The administrative committee found the respondent guilty under this accusation and

recommended disbarment. The Board of Governors, subsequently, upon review of said matter, entered an order directing the administrative committee to take further testimony on behalf of respondent. After a hearing was had by the administrative committee under said order, the two accusations were consolidated and referred to group 3 of the State Board of Governors for review and report. This group returned their findings and conclusions to the Board of Governors, in which they approved the recommendations of the administrative committee upon the first accusation, which we are now reviewing, and disapproved the committee's recommendation upon the second accusation. The findings and conclusions of group 3 of said Board of Governors were adopted by the Board of Governors, and the Board of Governors have recommended to this court that said respondent be suspended from the practice of law in this state for a period of two years.

It appears that respondent for about 15 years represented Mary Lee Dotson, a negro woman, about 49 years of age; that she was the owner of two lots in the city of Tulsa upon which she resided : that these lots constituted her homestead; that in September, 1928, her property was incumbered with taxes in approximately the sum of $225; that these taxes became delinquent; that respondent conducted negotiations whereby his client placed a mortgage upon her home for $1,000. The taxes were paid-from the proceeds of the mortgage and respondent received the balance. Each detailed the transaction in the record.

It is not disputed that respondent did not give his client any security whatever for the portion of the money which he received out of this loan except a promissory note which he executed payable to her in the sum of $1,500. Thereafter foreclosure proceedings were commenced and said Mary Lee Dotson lost her home under said proceedings. It appears also that said respondent lost the money which he had received from his client in an adventurous coal mining deal. It also appears that under respondent's arrangement the said Mary Lee Dotson has entered into a contract to purchase another place, and has executed purchase price notes and a mortgage as security upon which respondent has made some payments, though respondent has made no guarantee of the payment of said purchase price notes and is not legally bound to pay the same.

It also appears that the $1,500 note executed by respondent has been surrendered to him by the said Mary Lee Dotson, and in lieu thereof he has executed a new note for $800 joined in by B. B. See. This note is unsecured. Respondent contends that he borrowed this money in good faith from his client and in doing so he was not guilty of unprofessional or unethical conduct. He contends that Mary Lee Dotson came to see him in reference to getting aid and suggestions for paying her taxes which were past due, and that after several weeks' effort he was able to negotiate and procure a loan for her with which to pay the taxes and the loan to himself for the purpose of carrying on his negotiations in said coal deal. It was the contention of respondent that he desired to have a portion of this money to pay the expenses of Mr. See to go to Philadelphia to close the financing of a certain coal deal in LeFlore county, Okla. We need not be concerned with the coal deal and the expenses of Mr. See in connection therewith. It is immaterial whether respondent went to his client concerning the payment of the taxes on her home or whether she came to him in reference to the same. It is evident that she had implicit confidence in her attorney, respondent herein. It is also apparent that Mary Lee Dotson had no interest in any of the financial transactions of respondent, and that she was not concerned with financing the coal deal. Her concern in reference to mortgaging her premises had one purpose and that was the payment of her delinquent taxes. There is nothing to show that she was fully cognizant of the purpose of the transaction between her and respondent in reference to assisting him in financing the coal mining deal. She received no independent and competent advice in executing the mortgage far in excess of the amount to take care of her personal financial transaction in the payment of the delinquent taxes on her home. The mortgaging of her home whereby she lost her property through the advice of an attorney upon whom she relied, and who received special financial benefits therefrom, is apparently at par with the purchase by an attorney of his client's property. Such transactions are viewed with suspicion. The proving that there was no overreaching of the client's rights and that there was the utmost good faith toward the client in such transactions is upon the attorney.

In the case of Shirk v. Neible, 156 Ind. 66, 59 N. E. 281, 83 Am. St. Rep. 150, note, it was said:

"In matters other than those concerning

116

fees, an attorney and client are not absolutely prohibited by law from contracting with each other, nor does the law declare all such contracts either void or voidable, but such a transaction is closely scrutinized by the courts, and often declared to be voidable, when it would be deemed unobjectionable between other parties: Rolfe v. Rich, 149 Ill. 436, 35 N. E. 352; Gibson v. Jeyes, 6 Ves. Jr. 266, 277; Pisani v. Attorney General, L. R. 5 P. C. 517; Miles v. Ervin, 1 McCord Eq. 524, 16 Am. Dec. 623; Felton v. LeBreton, 92 Cal. 457, 28 P. 490; Mills v. Mills, 26 Conn. 213; Bibb v. Smith, 1 Dana (Ky.) 582; Morrison v. Smith, 130 Ill. 304, 23 N. E. 241; Starr v. Vanderheyden, 9 Johns. (N. Y.) 253, 6 Am. Dec. 275; Elmore v. Johnson, 143 Ill. 513, 36 Am. St. Rep. 401, 32 N. E. 413. The burden is, therefore, upon the attorney to show that the contract with his client, in a matter of advantage to himself, was fair and equitable; that the client was fully informed of his rights and interests in the subject-matter of the transaction, and the nature and effect of the transaction itself, and was so placed as to be able to deal with the attorney at arm's length. * * *"

In the case of Gibson v. Jeyes, 6 Ves. Jr. 276, Lord Eldon said:

"It has been truly said an attorney is not incapable of contracting with his clients. He may deal for a horse, an estate, etc. A trustee also may deal with his cestui que trust; but the relation must be in some way dissolved; or, if not, the parties must be put so much at arm's length that they agree to take the characters of purchaser and vendor, and you must examine whether all the duties of those characters have been performed."

See, also, Armstrong v. Morrow (Wis.) 163 N. W. 179, Ann. Cas. 1918E. 1156; 2 R. C. L. 1095; 6 C. J. 589-590.

This transaction proved to be to the prejudice of the client of respondent. It injuriously affected her rights and stripped her of her entire property. There are mitigating circumstances connected with this deal. To the credit of respondent, he is, under the record, assisting his client in purchasing another home. Respondent also contends as follows:

"The term 'review' as used in the State Bar Act, if the act is to be held constitutional, authorized the appointment of a committee to make an examination relating to the conduct of an attorney and to make recommendation thereof to this court and upon petition the attorney is entitled to have the facts reviewed; the provision of the acts relating to review means review of entire record anew before the court, uninfluenced in whole or in part, of the action of the board of committee, and it is for the court to determine whether the charge has been proven."

The Supreme Court of California, in the case of Aydelotte v. State Bar, 290 P. 41, said:

"Petitioner seeks to invoke in his own behalf a decision of this court, decided before the enactment of the State Bar Act (St. 1927, c. 34, p. 38) to the effect that an accusation looking to the disbarment of an attorney for conduct involving gross moral turpitude is in the nature of a criminal charge, and that all intendments should be in favor of innocence. In re Bar Ass'n v. Sullivan, 185 Cal. 621, 198 P. 7. The answer is that the qualified judges who are by law charged with the duty of passing upon the truth of the charges against petitioner have resolved all questions against him. On this review, the burden is upon the petitioner to show wherein the decision of the Board of Governors of the State Bar is erroneous or unlawful. State Bar Act, supra, sec. 26. He has not met that burden.

"Petitioner has not met the burden of overthrowing the serious charges preferred against him, which were found to be sufficiently substantiated to warrant the recommendation for his disbarment. He stands before this court charged with and found guilty by the Board of Bar Governors of a most serious and willful violation of his duty as an attorney and counsellor at law."

Section 26, chapter 264, Acts of Twelfth Legislature, Special Session, provides:

"* * * Any person so disbarred or suspended may, within 60 days after the filing of said certified copy of said decision, petition said Supreme Court to review said decision or to reverse or modify the same, and upon such review the burden shall be upon the petitioner to show wherein such decision is erroneous or unlawful."

The findings of group 3, adopted by the Board of Governors, in part, are as follows·

"Respondent's sole defense is that he borrowed the money in good faith; that he really was engaged in endeavoring to put over a deal in Philadelphia, and that he was disappointed that the deal did not go through. If that is a defense, then respondent should stand acquitted of the charge against him; otherwise he should not.

"We do not think that the fact that respondent was really engaged in undertaking to put over the deal in Philadelphia, that he really needed the money which he obtained upon his client's home for the purpose of paying the expenses incurred in endeavoring to put through that deal, that he gave his client his and See's note for $1,500, and intended to repay the indebtedness if and when he was able to do so, constitutes a defense. * * *

"He knowingly failed to consider the best interest of his client in furthering his own. In re Garret (Minn.) 188 N. W. 322; People ex rel. Chicago Bar Association v. Olson (Ill.) 153 N. E. 348. In re Ulmer (Mass.) 167 N. E. 749; Maloney v. State (Ark.) 32 S. W. (2d) 423; In re Wolf's Disbarment (Pa.) 135 Atl. 732; In re Carter, 164 N. Y. Supp. 862; In re Earley, 177 N. Y. Supp. 347; In re Levinson, 188 N. Y. Supp. 730; In re Rogers, 235 N. Y. Supp. 718. * * *

"The question is whether the attorney's conduct is so unprofessional and unethical as to show him unworthy of the trust and confidence generally accorded to members of the profession, and whether in the public interest he should be permitted to continue as a member of the bar. We think that the disciplinary action recommended by the administrative committee, namely, his suspension from the practice of law in this state for a period of two years, is light enough, and we recommend that the same be approved by the Board of Governors."

The Supreme Court in disbarment proceedings is not bound by the findings or recommendations of the local administrative committee or the Board of Governors, but will consider all the facts and circumstances revealed by the record in determining whether a member of the State Bar should be disciplined, suspended, or disbarred. These recommendations are merely advisory and recommendatory in character. However, they "carry weighty presumptions of justice and propriety." In re Rosenbaum (Pa.) 150 Atl. 748.

The Supreme Court of California, in the case of In re Stafford, 284 P. 670, said:

"The Supreme Court, on review of decision of disbarment by Board of Governors of the State Bar is not bound by findings or recommendations made by local administrative committee, nor their adoption by Board of Governors, and will examine record anew to ascertain whether or not any charge has been proven which merits disbarment."

See, also, In re Shattuck (Cal.) 279 P. 998.

After a review of the record, we conclude that the respondent should be and he is hereby suspended from the practice of law in this state for a period of one year from the filing of this opinion.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS, SWINDALL, OSBORN, BUSBY, and WELCH, JJ., concur. BAYLESS, J., absent. CULLISON, V. C. J., concurs in the law, but concludes that the suspension should be for a period of two years as recommended by the Board of Governors.