## CHASTAIN, Guardian, et al. v. SMITH et al.

No. 9551—Opinion Filed Feb. 10, 1920.

(Syllabus by the Court.)

**1. Equity—Jurisdiction—Complete Relief.**

A court of equity which has obtained jurisdiction of the controversy on any ground or for any purpose will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject-matter, and to avoid muliplicity of suits.

**2. Guardian and Ward—Cancellation of Guardian's Deed—Equity Jurisdiction— Restraining Record of Deed.**

The district courts of this state, in exercising their equity jurisdiction, have the power to cancel the deeds made by the guardian to the lands of the minor, and to annul the

order of the county court confirming same, and at the commencement of a suit or during the pendency thereof, brought for that purpose by the minor, based on the fraudulent acts of the guardian in causing the sale of the land of the minor, and procuring a confirmation of the sale and deed, such court, or the judge thereof, has power to restrain and enjoin the recording of such deed pending the hearing of the suit for cancellation upon its merits.

### 3. Same—Disposition of Cause.

Record examined, and the judgment of the trial court modified and affirmed.

Error from District Court, Carter County: W. F. Freeman, Judge.

Action by Lula Smith and Columbus Smith, minors, by their sister and next friend. Amanda Alexander, against J. B. Chastain, guardian, and others. Judgment for plaintiffs, and defendants bring error. Modified and Affirmed.

Sam H. Butler, for defendants in error.

H. C. Thompson, for plaintiffs in error.

JOHNSON, J. On January 24, 1917, Amanda Alexander, as next friend of Lula Smith and Columbus Smith, filed her petition in the district court of Carter county wherein it was alleged:

"Comes now the plaintiffs, Lula Smith and Columbus Smith, minors, by their sister and next friend, Amanda Alexander, and for cause of action against the defendants allege and state that:

"1. J. B. Chastain is a resident of Seminole county, Oklahoma, and claims to be acting guardian of these plaintiffs, and that J. B. Spragins is a resident of Carter county, Oklahoma, and that S. W. Tyer is a resident of Carter county, Oklahoma, and is the county clerk of Carter county, Oklahoma, and it is a part of his duties to record deeds and other papers duly authenticated for recording.

"2. Plaintiffs say that they are Chickasaw freedmen, and as such were entitled to allot their proportion of the lands of the Chickasaw and Choctaw Nations, and that they did allot the following described lands, to wit: The west twenty and 12-100 acres of lot three (3) and the northeast ten (10) acres of lot three (3), section eighteen, T. 1 S., R. West, in Carter county, Oklahoma, being the lands of Lula Smith, and the northeast quarter of the southwest quarter of section eighteen (18), T. 1 S., R. 2 W., in Carter county, Oklahoma, and being the lands of Columbus Smith.

"(3) Plaintiffs say that prior to July 20, 1916, defendant J. B. Chastain, who claims to be the guardian of plaintiffs, filed a petition in the county court of Seminole county, Oklahoma, and prayed for an order to sell the lands of these plaintiffs under the procedure of the county court of Seminole county, Oklahoma, and that without any notice to these plaintiffs, and wholly without an opportunity to be heard and in total disregard for the rules of the Supreme Court of Oklahoma and in violation of law, said defendant obtained an order to sell all of the lands of these plaintiffs upon some kind of claim.

"Plaintiffs say that they are each over the age of fourteen years, and that their ages are as follows: Lula Smith is 17 years of age, and Columbus is 14 years of age, past; and that they were not called as witnesses and were not present in court and gave testimony as by law required.

"4. That in pursuance of said order of sale, the defendant J. B. Chastain, claiming to act as guardian, proceeded to advertise said lands for sale, and did on the 20th day of December, 1916, sell said lands in Ardmore, Oklahoma, at 2:00 on said date to the defendant J. B. Spragins, for the sum of $700 cash, subject, however, to the confirmation of the county court of Seminole county, Oklahoma.

"5. That pursuant to said sale, the defendant J. B. Chastain, still claiming to act as guardian, made his return of sale, and the same was set for hearing on January 18, 1917, at 1 o'clock p. m., in the town of Wewoka, Oklahoma, being the county seat of said county, and that these plaintiffs, by their sister and next friend, engaged counsel and sent Sam H. Butler, a member of the Ardmore Bar, to Wewoka to protect against the confirmation of said sale, and that they filed their written protest, in the following words and figures, to wit: 'Comes now Lula Smith and Columbus Smith, and protest against the confirmation of the sale of their land, as described in the petition to sell, for reasons that they are more than fourteen years of age, and were residents of Carter county, Oklahoma, and had no notice of the filing of the petition to sell their land, and were not present in court when the order of sale was made and entered, and for the further reason that the petition does not show any reasons why said lands should be sold. That the petition to sell and the order of sale are contrary to law in such cases.'

"6. Plaintiffs say that after hearing evidence the county judge of Seminole county, Oklahoma, overruled the protest of these plaintiffs, and when they gave notice of appeal to the district court of said county and state the county judge of Seminole county, Oklahoma, entered an order and fixed the appeal bond in said cause at fifteen hundred dollars ($1,500), which is more than twice the amount that said land sold for, and said county judge further required plaintiffs to make a bond and have same signed by one resident of Seminole county, which said action of the court was a practical denial of the rights of these plaintiffs to appeal. They state that they have no property except the land in controversy, and are unable to make such a bond

"7. Plaintiffs state that S. W. Tyer is the county clerk of Carter county, Oklahoma, and that the defendant J. B. Chastain will execute a guardian's deed to said land to the defendant J. B. Spragins, and the defendant S. W. Tyer will, when same is presented to him, file and record the same and thereby create a cloud upon the lands of the plaintiffs, and that the order of the county judge in ordering said land to be sold and the order of sale was void, and the county court had no jurisdiction, under the law, to make such orders, and that his order fixing the appeal bond was wrong and oppressive and amounts to a denial of the rights of these plaintiffs to appeal said cause, and that unless this court enjoins the defendants from recording the guardian's deed these plaintiffs will suffer irreparable loss and will be defrauded out of their lands.

"Wherefore they pray the court to restrain the defendant S. W. Tyer from recording said deed, and that upon a hearing he be forever enjoined from recording said guardian's deed, and that the confirmation of the sale be declared void, and for such other relief as may be equitable.

"Amanda Alexander on her oath, says that the facts set forth in the foregoing petition are true as she verily believes."

At the same time there was filed an order of the judge of said court, which order was as follows:

"Now on this 24th day of January, 1917, upon reading the petition of plaintiffs, upon consideration of same by the court, it appears that plaintiffs are entitled to the relief prayed for in their petition, which is duly verified, and it is therefore ordered by the court that a temporary restraining order issue against the defendant S. W. Tyer, his deputies and employes, to prevent him from recording a guardian's deed from J. B. Chastain, guardian, to J. B. Spragins, for the following lands, to wit: West 20.12 acres of lot 3, and N. E. 10 acres of lot 3, sec. 18, and N. E. ¼ of S. W. ¼ of sec. 18, all in T. 1 S., R. 2 West in Carter county, Oklahoma, and until further order of this court, and it is further ordered that Feb. 26, 1917, is hereby set for hearing and determining said petition for injunction, at the district court in Ardmore, Carter county, Oklahoma, and that notice of same be given said defendant at least 10 days before said hearing."

Summons was issued and served upon J. B. Chastain, J. B. Spragins, and S. W. Tyer, who, on May 9, 1917, filed a demurrer, which was as follows:

"Comes now the defendants and demur to the petition filed herein and allege and aver that the petition does not state facts sufficient cause of action against defendants, and that plaintiffs have a plain and adequate remedy at law by an appeal to the district court of Seminole county, Oklahoma, because of which an injunction will not lie."

And thereafter, on February 17, 1917, their motion to vacate the injunction and restraining order theretofore issued, was filed, alleging as follows:

"Comes now J. B. Chastain, guardian of said minors, Lula Smith and Columbus Smith, and defendants J. B. Spragins and S. W. Tyer, court clerk, all defendants herein, and moves the court to vacate, annul, and set aside the injunction and restraining order heretofore granted in this cause on January 24, 1917, for the following reasons, to wit:

"1st. Because it appears from the facts set forth in plaintiffs' petition that they are not entitled to the relief sought.

"2nd. Because of a want of equity in said bill of complaint.

"3rd. Because it appears from said petition that this court is without jurisdiction to grant the relief sought or to review or set aside the orders, judgments, or decrees of the county court of Seminole county, acting in probate matters.

"4th. Because it appears that the county court of Seminole county alone had exclusive jurisdiction over the subject-matter of this litigation.

"5th. Because the remedy of said complainants, as appears by their bill of complaint, was by appeal to the district court of Seminole county, Oklahoma.

"6th. Because the said complainants had a complete and adequate remedy at law, viz., by appeal to the district court of Seminole county, Oklahoma.

"7th. Because it appears from the affidavit of the guardian, J. B. Chastain, that due notice was given of the hearing on the petition for the sale of the real estate of said minors, by posting in three public places in Seminole county, Oklahoma, a copy of the order of the court setting the hearing of the petition of the sale of the real estate in said guardianship case No. 1589 for fifteen days or more prior to the hearing, and also by publishing a copy of said order for three weeks in the Seminole County News prior to the hearing, the said Seminole County News being a weekly newspaper published in said county of Seminole, affidavits are marked 'Exhibit B4' and attached hereto as a part hereof."

"8th. Because it appears from the duplicate order of sale dated July 20, 1916, in the matter of the estate of Lula Smith and Columbus Smith, Number 1589, pending in the county court of Seminole county, Oklahoma, made and entered in pursuance of the petition for said sale, filed therein on June 5, 1916, which said duplicate order of sale, is attached hereto as a part hereof as Exhibit B5, that due notice of the hearing of said petition for sale had been given, posted, and published as requred by law, and that the whereabouts of said wards and of their next of kin

was shown to the court to be wholly unknown to the guardian, J. B. Chastain, and the reason they could not be produced in court was made known to the court on the said hearing to secure decree of sale aforesaid, and that same is not subject to collateral attack as sought by the plaintiff herein.

"9th. That the residence and whereabouts of Lula Smith and Columbus Smith, minors, and their next of kin or the persons having custody of said wards was wholly unknown to the said J. B. Chastain on July, 20, 1916, and for several months prior thereto and could not be secured by the use of due and timely diligence, on the part of the said guardian, nor could they be produced in court by said guardian.

"10th. That because of the contents of the record certified to and attached hereto from the county court of Seminole county and made a part' hereof, it appears that said guardian was authorized to make the sale complained of. That the same was regular; that the sale was duly confirmed; that all notices were given; that a compliance with the law was duly made in all respects in so far as the same could be complied with.

"Wherefore, the premises considered, the defendants pray for a dissolution of the injunction and restraining order heretofore granted in this cause, and that the same be vacated and annulled."

To which motion were attached duly authenticated copies of the proceedings of the county court of Seminole county in cause No. 1589, in the Matter of the Guardianship of Lula Smith and Columbus Smith, Minors.

A hearing was had upon the demurrer and motion, upon the foregoing record in the court below, and on May 19, 1917, the court made the folowiing order:

"This motion coming on to be heard in open court on this May 19, 1917, on motion of defendant to dissolve the injunction herein granted and a demurrer leveled at the petition, and the court, being fully advised in the premises, is of the opinion that both said motion and said demurrer should be overruled, and that final judgment should be entered herein for plaintiff, perpetuating said injunction. It is therefore ordered, adjudged, and decreed by the court:

"1st. That the motion to dissolve the injunction herein be, and the same is hereby overruled, to which the defendants except.

"2nd. That the defendants' demurrer leveled at the petition herein be, and the same is hereby overruled, to which the defendants except. That temporary injunction herein granted be, and the same is hereby made perpetual, and the defendant J. B. Chastain, and all parties claiming by, through, and under him, be and the same are hereby enjoined from setting up any right, title, claim, interest, or estate, in, to, and under the purported sale of said land mentioned in the petition,

and, further, that said J. B. Chastain does, and he is hereby enjoined from making any conveyance of said land, under and in accordance with said purported sale, and, further, that said purported sale be and is hereby cancelled, set aside, and held for naught, and plaintiffs recover their costs herein, to all of which the defendants except, and in open court gives notice of and prays for an appeal to the Supreme Court of the state of Oklahoma and asks for and is allowed fifty days in which to prepare and serve case-made, and defendants are allowed ten days thereafter being served to suggest amendments, the same to be settled upon five days notice to be given by either party, to the adverse party."

To reverse the foregoing final order of the trial court, this proceeding in error was regularly commenced. The petition in error sets up the following specifications of error, to wit:

"1st. Said district court erred in overruling plaintiffs in error's motion to vacate, annul, and set aside the temporary injunction and restraining order theretofore granted, which was duly excepted to at the time.

"2nd. That said district court erred in overruling plaintiffs in error's demurrer leveled at the petition below, which was duly excepted to at the time.

"3rd. That said district court erred in rendering final judgment perpetuating the temporary injunction in favor of plaintiffs below and against defendants below, which was duly excepted to at the time.

These assignments of error will be considered together.

The petition of the plaintiffs, by sufficient allegations, discloses that this was an action for equitable relief commenced by the plaintiffs, who were minors, against their guardian for the grossest kind of fraud, which, if permitted to continue, would culminate in irreparable injury to them and their meager estates. They join as defendants the purchaser of the lands of the plaintiffs at an illegal sale and the county clerk of the county where the lands were situated, whose duty it was to file and spread of record the illegal deed of their guardian to such purchaser, thereby clouding the title of plaintiffs to said land. We think this belongs to that class of cases where courts of equity without reluctance should exercise their power to the fullest extent if need be. This record discloses an unusual situation, that of a guardian seeking to sell the entire estates of his wards, consisting in each instance of 40 acres of lands, over their solemn protest, they being over 14 years of age; he insisting in one breath that such sale was necessary to satisfy expenses incurred for their education and maintenance for the preceding two years, expenses incur-

red in administration, including attorneys fees, and in the next breath contending that the residence and whereabouts of his said wards were wholly unknown, and for that reason he could not serve them personally with notice of such application to sell or have them personally before the court, with their mother and stepfather, to be examined by the court touching the necessity for such sale. However, after the sale and report thereof to the court, on the hearing for confirmation they appeared by attorney and next friend and filed the written protest above set forth, challenging his right and authority to make the sale. Notwithstanding this, the guardian succeeded in getting the sale confirmed. These are circumstances so unusual as to excite suspicion and cause inquiry to be made. Was this showing such as to clothe a court of equity with jurisdiction? We think it was.

The correct rule in such cases is thus stated in 16 Cyc. 81, et seq.:

"With a single exception, courts of equity have jurisdiction to relieve in cases of fraud. In so far as the law affords relief from fraud the jurisdiction is concurrent, but equity will generally decline to exercise it where the legal remedy is in all respects adequate. Accordingly plaintiff will ordinarily be relegated to an action at law if his bill seeks only damages or the payment of money which might be recovered in such action, or if the bill shows no right to relief other than that obtainable at law. But as this rule is merely a guide for the discretionary exercise of the jurisdiction, and does not limit the jurisdiction itself, equity may grant relief, although an adequate remedy might be found in an action at law. This view has the support of by far the greater weight of opinion and authority, notwithstanding a considerable number of cases treating the availability of a legal remedy as restricting the jurisdiction itself and not merely the propriety of its exercise. * * * Equity will always entertain jurisdiction to relieve from fraud, notwithstanding that the law would afford relief, either by action or defense, where such remedy would be doubtful, incomplete, or otherwise inadequate. This is true where the complete protection of plaintiff demands the setting aside of a conveyance, the re-establishment of a lien, the restoration or establishment of title, or other specific relief of an equitable character. The concurrent jurisdiction is also invoked by the necessity of a discovery or of an accounting. Equity will also take jurisdiction where plaintiff has been fraudulently deprived of his legal remedy, or it seems where by reason of defendant's insolvency the judgment at law would be unavailing, and equitable relief is practicable. The adequacy of the legal remedy is not presumed, and equity will take jurisdiction where it is doubtful, or where the court is not satisfied that plaintiff could be remitted to law without injustice."

That the district courts of this state have jurisdiction to make the orders and render the decrees complained of, was expressly decided by this court in the case of Elrod v. Adair, 54 Okla. 207, 153 Pac. 660. The syllabus is as follows:

"1. * * * It is held that it is sufficient to warrant the court, in the exercise of its equitable powers, to cancel the deeds made by the guardian to the lands of the minor, and to annul the order of the county court confirming same.

"2. The district courts in this state, in exercising their equity jurisdiction, have the power to vacate and annul orders or judgments of other courts, in a proceeding brought for that purpose, for fraud, inducing and entering into such order or judgment, where such fraud is extraneous to the issues in the proceeding attacked, and especially where the court has been imposed upon by such fraud."

The foregoing opinion contains a full discussion of the questions here involved, citing numerous opinions of this court in support thereof.

This petition was verified, and on being presented to the judge of the district court he issued the temporary restraining order above set out, set down the cause for a hearing for injunction, and ordered that notice be given.

Rev. Laws 1910 provides as follows:

"Sec. 4867. When it appears, by the petition, that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce injury to the plaintiff, or when, during the litigation it appears that the defendant is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, a temporary injunction may be granted to restrain such act."

"Sec. 4869. If the court or judge deem it proper that the defendant, or any party to the suit, should be heard before granting the injunction, it may direct a reasonable notice to be given to such party to attend for such purpose, at a specified time and place, and may, in the meantime, restrain such party."

The procedure prescribed by the sections of the statutes, supra, was followed by the trial court. We find that the trial court properly overruled the defendants' demurrer and motion to vacate the restraining order, and properly granted an injunction, but that part of the order making the injunction perpetual and canceling the guardian's deed was erroneous, for the reason that there was no proper hearing of the cause upon its merits. Therefore the judgment of the trial court is so modified

as to make the same a judgment granting a temporary injunction, and, as thus modified, the judgment is affirmed, and the trial court directed to proceed in accordance with the views herein expressed.

KANE, PITCHFORD, McNEILL, and HIGGINS, JJ., concur; BAILEY, J., concurs in conclusion.