## STATE ex rel. GOODE et al. v. CUTLIP.

No. 9863—Opinion Filed Oct. 11, 1921.

(Syllabus.)

**1. Attorney and Client — Disbarment Proceeding—Referee's Report —. Conclusiveness.**

The report of a referee appointed to take evidence and report his findings of fact and conclusions of law in a disbarment proceeding is not conclusive as to either the findings of fact or the conclusions of law, but is accorded every reasonable presumption of being correct. The burden is on the party attacking it, but it is to be freely set aside by the court if found to be incorrect.

**2. Same—Presumption of Innocence—Burden of Proof.**

In a proceeding to disbar an attorney at law, such attorney is presumed to be innocent of the charges preferred and to have performed his duty as an officer of the court in accordance with his oath, and the evidence in support of the charges must satisfy the court to a reasonable certainty that the charges are true and warrant a judgment of disbarment.

**3. Same—Grounds for Disbarment in General.**

The law does not demand that every technical infraction of the law by an attorney shall require his disbarment, although an attorney should endeavor to observe literally the law, but it is those infractions of duty that involve moral turpitude and evince a depraved character that render such attorney untrustworthy and a reflection upon the bar and the court, as an attorney thereof, that demand his disbarment.

**4. Same—Sufficiency of Proof.**

In an action to disbar an attorney his guilt must be clearly proven, although the proceeding is a civil action.

**5. Same — Delayed Settlement with Client for Money Collected—Judgment of Reprimand.**

It is the duty of an attorney, after collecting money for his client, to settle with his client at once, and although he has made a complete settlement with his client, if he failed to do so within a reasonable time, his conduct is subject to criticism and he should be reprimanded.

Original Action for Disbarment of T. C. Cutlip, an Attorney; Frank M. Bailey, Referee.

Findings and conclusinos of referee recommending disbarment set aside, and dismissed as to all charges except one, and defendant reprimanded on said charge.

Shartel, Dudley & Shartel, for relators.

W. S. Pendleton, for respondent.

McNEILL, J. This is an original action commenced in this court by the state of Oklahoma ex rel. Mark Goode, Roscoe C. Arrington, Park Wyatt, J. D. Lydick, E. E. Hood, Alex Fisher, Louis Harkey, and J. Harmon Lewis to disbar T. G. Cutlip, a member of the bar of Pottawatomie county. The petition contained ten separate and distinct charges. The case was referred to a referee. who heard the testimony and made findings of fact, finding the defendant guilty on all charges except counts Nos. 5, 8, and charge No. 9. which was withdrawn, and recommending disbarment of defendant. To this report exceptions were filed. The record is very lengthy, and contains about 1,000 pages. There is no index to the case-made, and the same contains a great number of exhibits. and the exhibits are not numbered, nor are the pages numbered The plaintiffs in their brief to support the findings of the referee have copied the pleadings and findings of the referee, but have set out no evidence which would tend to support said findings.

The brief on behalf of defendant has referred to each finding and the exception thereto, and copied the evidence relied upon to support the plea that the evidence. when measured by the proper rules, in cases of this kind, is insufficient to support the findings of the referee, and refers to the pages in the record where the evidence is found. The plaintiffs in their reply brief have failed to refer to any evidence which would support the findings of the referee. Under the rules of this court we would be justified in setting aside the findings of the referee, and dismissing the case. but, instead, we have assumed the unnecessary burden of examining the entire record for the purpose of disposing of the case on its merits.

The law applicable to most of the questions involved was announced in the case of In re Reilly, 77 Okla. 192, 183 Pac. 728, where the court in the syllabus announced the law as follows:

"The report of a referee appointed to take evidence and report his findings of fact and conclusions of law in a disbarment proceeding is not conclusive as to either the findings of fact or the conclusions of law, but is accorded every reasonable presumption of being correct. The burden is on the party attacking it, but it is to be freely set aside by the court if found to be incorrect.

"In a proceeding to disbar an attorney at law, such attorney is presumed to be innocent of the charges preferred and to have performed his duty as an officer of the court in accordance with his oath, and the evidence in support of the charges must satisfy the court to a reasonable certainty that the charges are true and warrant a judgment of disbarment.

"The law does not demand that every technical infraction of the law by an attorney shall require his disbarment, although an attorney should endeavor to observe literally the law, but it is those infractions of duty that involve moral turpitude and evince a depraved character that render such attorney untrustworthy and a reflection upon the bar, and the court, as an officer thereof, that demand his disbarment."

The record discloses this proceeding is an outgrowth of the proceedings relating to the famous Enos Nichols estate, and most of the complainants have been connected with that estate, and the defendant has civil proceedings pending against most of the complainants or their clients to recover purported fees and claims collected by them or their clients, and at the time of taking the testimony by the referee most of said actions were still undisposed of. This fact. however, would be no justification nor permit an attorney to practice law if unworthy; but the court is entitled to consider this matter in weighing testimony when it is admitted such animosity exists between the complainants and the defendant, and most of the complainants have testified in the case, and it is upon their testimony that the guilt or innocence of the defendant upon the different charges depends.

The first charge against the defendant is that he changed the records in a case pending in the district court of Pottawatomie county, that had been appealed from the county court, by withdrawing and extracting from the transcript of the record prepared by the clerk of the county court a portion of an original motion, and substituting an amended motion, without the consent and knowledge of the clerk or counsel. This matter arose over certain proceedings in the Enos Nichols estate. Mr. Search was special administrator of said estate, and filed a report in the county court and retained for himself and attorneys some $9,000. Mr. Cook was thereafter appointed administrator of the estate, and defendant. as attorney for Mr. Cook, filed a motion in the county court to have said Mr. Search account for said funds, and to set aside an order of the county court allowing said disbursement for the reason the same was allowed without notice, or hearing, and was void. The county judge sustained a demurrer to this motion. Mr. Cutlip, as attorney for Mr. Cook, took an appeal to the district court. While the case was pending on appeal Mr. Cutlip filed an original action against Mr. Search in the district court to recover these same items for the reason the same were disbursed without authority. The transcript of the papers on the appeal from the county court to the district court was not complete, and was returned to the county court for correction, and thereafter returned to the district court. Mr. Goode filed a motion to dismiss the appeal for the reason the record had been changed and instead of the original motion being in the transcript there was a paper styled amended motion appearing therein. While said motion was pending. Mr. Cutlip dismissed the appeal. There is no material difference between the original motion and the amended motion. The amended motion is more specific in detailing the facts relied upon. If the original motion failed to state facts sufficient to set aside the order of the court the amended motion was also insufficient, so in the outset we are called upon to disbar an attorney for making an immaterial change in the record.

The defendant denies that he changed the record. Mr. Goode, attorney, swears that he did not see him, but he is positive that he changed it. What purported to be a carbon copy of the original motion was served upon Mr. Search, and it was contended it was a carbon copy of the original. It could not be a carbon copy because the jurat was not on the same place on the paper as on the one filed, which was supposed to have been detached from the original motion and attached to the amended motion. Who prepared the copy of the motion served upon Mr. Search, no one knows. The clerk does not know whether he prepared a certified copy or not. The sheriff does not know whether he prepared one, nor has he any

record that he served one. The defendant testified that all he had to do with the matter was, after filing the original motion, he dictated an amended motion to the county judge's stenographer and signed it, and then talked to the county judge regarding the filing of the same, and the county judge advised him that if the amended motion was sufficient the original motion would be, and he never had the amended motion after that time.

It is sufficient to say that the evidence is insufficent, under the rule heretofore announced, to support the finding of the referee.

The second charge accuses the defendant of changing a report of the referee, before the same was signed by the referee, by withdrawing one page and inserting therein another page without notifying the referee or the county attorney thereof, and for the purpose of recovering a larger sum of money from the county than that found by the referee but the referee noticed said change and corrected said report, but Cutlip misrepresented the facts to the court, and obtained judgment for more than $1,000 more than was actually due, and by fraud and misrepresentations deceived the court, and by fraud and misrepresentation obtained a warrant for said amount from the county treasurer. The report changed, or purported to have been changed, was not a report that had been signed by the referee nor filed in the case, but a report the referee expected to sign and file. Whether the report was changed or not, it will be unnecessary for us to determine; but the offense, if any, depends upon whether the defendant misrepresented the facts to the court and deceived the court in obtaining the judgment, and whether he obtained the warrant from the county treasurer by fraud and misrepresentations. The deputy county attorney who had charge of this matter refutes every allegation of fraud in the case; refutes the allegation that there was any fraud perpetrated upon the court, or that Cutlip made any fraudulent statements or misrepresentations to the court. There is no evidence to substantiate the charge that the court and the county attorney were imposed upon by false representations in obtaining the judgment, unless it be the deputy county attorney's testimony, and that refutes all the allegations that the judgment was obtained by fraud or false representations.

The referee testified he gave the report to Mr. Cutlip for Mr. Cutlip and Mr. Carlton to go over, and when he submitted it to Mr. Cutlip it was not an official report and was in loose form, and when it was returned by Cutlip and o. k.'d by Cutlip and Carlton, a page had been withdrawn and another inserted. Mr. Carlton, deputy county attorney, testified that the judgment he o. k.'d was something like $800 or $900 more than called for in the referee's report; that he consented to the modification of the referee's report, which would give a larger judgment against the county, and he did this assuming that the referee had permitted the county to receive 18 per cent. penalty for money when the money was in the hands of the county treasurer. His testimony upon this question was as follows:

"I went and examined the statute and made up my mind, and of course I already had that in mind, that that could not be done. Then I stated to the court my understanding that I did not think the county would have a right to the penalty where the money was lying in the hands of the county treasurer. That is the reason why the change was made and the reason it was made."

He further testified that he knew at the time he o. k.'d the journal entry that there was a controversy about the referee's report being altered. Afterwards he found that the taxes had not been paid at maturity as he first thought they had been. He then called Mr. Cutlip's attention to that fact, and he and Mr. Cutlip agreed that the judgment might be modified. In regard to obtaining a warrant by fraud, Mr. Cutlip obtained a certified copy of the judgment and presented it to the county treasurer. While there was some difficulty over obtaining the warrant, yet the judgment was regular upon its face and certified to, and by virtue of said judgment he was entitled to the warrant. The charge regarding the fraud and misrepresentations to the district judge is not supported by any evidence.

The third charge alleges that, after the transcript of the testimony had been transcribed and properly certified by the court reporter, and after the trial judge had signed and settled the case-made, the defendant, before filing the same in the Supreme court, willfully and intentionally altered and changed the case-made by withdrawing page 105, being a copy of a petition which contained 51 names, and inserting therein a purported copy containing 41 names, and further changed the case-made by changing the word "yes" on page 142 of case-made to read "no", and withdrawing page 173 and inserting a new page therein.

This alleged offense occurred in the year 1914. The court reporter who prepared the

case-made testified that he had certified to the case-made and had copied the exhibit appearing on page 105 from his notes. On cross-examination, when shown the original case-made, he admitted the transcript was never certified by him, and he did not know whether he copied the exhibit on page 105, as he had no independent recollection of the same. At the time of preparing the case-made the court reporter made two carbon copies; neither of the carbon copies contained a copy of the exhibit which was page 105. The record discloses the reporter did not prepare a complete case-made, but simply a transcript. If the court reporter copied the exhibit which was page 105 and made it a part of the original transcript, we are unable to understand why he did not also make it a part of the carbon copies of the case-made the same as he would other testimony. Mr. Arrington and Mr. Wyatt, opposing attorneys in the case, testified that they were positive that at the time the case-made was signed and settled by the trial judge the exhibit which was page 105 contained 51 names. It is admitted there was no controversy in the trial of the case that the petition did not contain 51 names, but the question was whether all persons who signed were qualified voters, and whether that was the necessary number to make the petition legal.

This transaction occurred about five years prior to the time the witnesses testified and were positive that the exhibit in the original case-made contained 51 names when signed and settled. It does appear unusual that attorneys should be so positive that the petition contained 51 names, when there was no contention in the trial of the case that the petition did not contain 51 names. When that is considered, and the further fact that this occurred five years prior to the time the witnesses were testifying, it leaves so much opportunity for the witnesses to be honestly mistaken that the court is of the opinion that the evidence is not sufficient to satisfy the court to a reasonable certainty that the charge is true. The rules of this court are so liberal in permitting the correction of a case-made after the same is filed in this court. it is hard to realize how anyone would expect to obtain an advantage in such a manner.

In regard to changing the word "yes" to "no", this was done with a lead pencil, and the change could not change the testimony, for the other portion of the evidence following disclosed that the answer was "yes", and the only change is that over the word "yes" is written the word "no" with a lead pencil, still leaving the case-made in a con-

dition that the same would not mislead the court.

In regard to page 173, the referee did not find the defendant guilty of making that change, so we will not consider the same.

The fourth allegation relates to a transaction that occurred in 1912, in which none of the complainants were interested. The facts were that Mrs. Sewell owed a note to Mr. Hubbard in the sum of $500, secured by a mortgage. She paid the money to Mr. Cutlip for him to obtain a release of the note and mortgage. That Cutlip paid $250 and personally retained the other $250 and extended the note for one year, in the year 1913 when the note became due again. Mr. Hubbard wrote Mrs. Sewell regarding the same. Her son-in-law went to see Mr. Cutlip regarding the matter, and Mr. Cutlip advised him it was all right, that he would take care of same, and he paid the $250 and interest and the mortgage was released. No one complained about the transaction until some six years afterwards. The defendant testified that he advised Mrs. Sewell of the matter, and she knew the facts. She did not testify, and without her testimony there is insufficient evidence to support the charge.

The sixth accusation is the defendant changed a journal entry by writing in the name of S. L. Harkey. The original papers in this case are before the court. The defendant was representing the First National Bank of Tecumseh in a suit pending against Harkey, Wells, and Wilcox; a garnishee summons was served on the First National Bank, which had some funds belonging to Harkey. In 1917, Wells and Wilcox signed and filed a statement confessing judgment, and judgment was thereafter rendered against Wells and Wilcox. The defendant prepared the confession of judgment and a journal entry. Wilcox and Wells paid the bank, and defendant had no further interest in the case. The name of Harkey was written in the journal entry with pen and ink. Harkey had not signed the confession of judgment, and of course even writing his name in the judgment would not bind him; but why the defendant should write his name in the judgment when the party he represented had received its money we are unable to understand. He says he did not write the name of Harkey in the journal entry, and no one says it is his handwriting, although it was testified that it looked like Cutlip's writing. Thereafter the matter was called to the attention of the court by a motion to set aside said judgment against Harkey; the defendant was notified and he informed the court he had no

interest in the matter, that his client had been paid, but would like to have the matter passed until Wilcox and Wells arrived. The defendant did not represent Wilcox and Wells, and if he wanted to have the name of Harkey inserted in the journal entry it could have been inserted before being signed as well as after, because Harkey was not present and was not being represented. The evidence is entirely insufficent to support this finding.

The seventh accusation is that A. J. Bryant, an attorney of Denver, Colorado, filed suit for the Midland Savings & Loan Association against W. T. Williams and employed Mr. Cutlip as local counsel; judgment was had and property sold at foreclosure sale to the Farmers' National Bank of Tecumseh for $776, $100 of which was attorney fee; the bank issued two drafts payable to Cutlip, who indorsed and collected the money on the same; the bank made said purchase for the benefit of Williams. While the defendant offered an excuse for not making disbursement immediately, the record disclosed that the money was not disbursed as soon as it should have been. In May, 1915, two months after receiving the money, the defendant forwarded $385, and a short time thereafter $15, and on November 13, 1915, he forwarded $150. In February, 1916 he forwarded $150, leaving a balance of $46.50, which was sent sometime thereafter, although defendant contends there was some question about a portion of the attorney fee. The evidence disclosed that the defendant wrote one letter to Mr. Bryant which would intimate that the money was not available a short time after he received the same; that thereafter he never denied receiving the same, but always advised the attorney it would be sent.

While the facts are not as aggravated as those in the case of In re Connell, 79 Okla. 212, 192 Pac. 594, the record, however, disclosed that although the defendant in this case has paid the full amount collected, he was derelict in his professional duties to his client, and should be reprimanded by this court for the same.

The tenth accusation accuses the defendant of wrongfully, corruptly, and fraudulently changing a journal entry or decree after the same was signed by the court by erasing the initials G. W. in front of the name Kinard and inserting with a pen the initials J. B. or J. P. The original decree is before the court. The title of the decree shows that Edward George was plaintiff, and among the defendants was J. B. Kinard. The title does not disclose that G. W. Kinard was a party to the proceedings. In the body of the decree, wherein it recited the defendants upon whom service was had, appears the name G. W. Kinard, written with a typewriter. This was changed with a pen to read J. B. or J. P. It is not certain whether it is J. B. or J. P.; the letters J. B., however, would make the same correspond with the title of the case as shown by the decree. There could certainly be no fraud and no corrupt motive in changing the initials of a man's name in the body of the journal entry to correspond to the initials appearing in the title. This occurred in the year 1912, and the relators are seeking to disbar the attorney for making the change and correction. When the change was made, who made it, or how it was made. no one knows. The judge who tried the case. when the title of the case appeared against J. B. Kinard and the name G. W. Kinard did not appear in the title of the case as one of the defendants, certainly would not expect to render judgment against G. W Kinard. The evidence is insufficient to support the finding.

While the case embraced ten separate and distinct charges, one charge was withdrawn; the evidence being insufficient to support eight of the allegations against the defendant. The defendant is subject to reprimand by the court as to the seventh accusation. The costs will be taxed eight-ninths to the complainants and one-ninth to the defendant.

HARRISON. C. J., and PITCHFORD. ELTING, and NICHOLSON, JJ., concur.