### In re MABEN.

No. 24124. Dec. 5, 1933.

E. R. Jones, Warren T. Spies, and George C. Abernathy, for the State Bar of Oklahoma.

A. F. Moss and S. J. Montgomery, for respondent.

OSBORN, J. This action involves an accusation filed against W. N. Maben, a member of the State Bar of Oklahoma, filed before the administrative committee for section 21. The original accusation contained four charges set out in separate counts. After a hearing, the committee dismissed the first, third, and fourth counts for lack of sufficient evidence to sustain the same and found the evidence sufficient to sustain count two and recommended the disbarment of respondent Maben.

The report and recommendation was filed with the Board of Governors, and on August 3, 1932, said board filed its report approving the report of the committee as to counts one, three, and four and entering a qualified approval as to the finding on count two and recommended the disbarment of respondent.

In view of the action of the committee and Board of Governors, it will not be necessary to consider anything except the charge contained in count two of the accusation. It appears that respondent was retained to represent one Bill Armstrong, charged with robbery in the superior court of Pottawatomie county; that Armstrong was convicted and sentenced to serve a

term of 25 years in the state penitentiary; that he served notice of appeal to the Criminal Court of Appeals; that a supersedeas bond was prepared and was presented by respondent to Mabel Marlatt, clerk of the court, Clarence Tankersley, county attorney, and Judge LeRoy Cooper, judge of the superior court of Pottawatomie county; that the clerk and county attorney refused to approve said bond, but on the recommendation of respondent, the judge approved the same and Armstrong was released from the penitentiary. It developed that the names of two of the principal sureties on said bond had been forged and that they did not sign said bond. The two sureties in question were Frank Mike and M. J. McSoud, and there was attached to said bond an affidavit of qualification of the said Mike and McSoud in which it was stated that they were worth $50,000 over and above all exemptions, and that said qualification described certain real estate located in Bristow, Okla. There was also attached to said bond a certificate of an abstract company to the effect that the property so described was owned by Mike and McSoud, and that the property was clear and free of all incumbrances.

With due deference to the witnesses, it may be said that it was somewhat difficult for them to recount the exact words used by respondent in the conversation had at the time the bond was presented for their approval. However, from said testimony, the administrative committee found that respondent, at the time he presented said bond for approval, knew that said bond was a forged instrument and knew that it was worthless.

The following appears in the opinion of the Board of Governors:

"Upon due consideration of the record, findings, conclusions and recommendations of the administrative committee with reference to counts 1, 3, and 4 are approved, and the accusation against the respondent as to those counts is dismissed.

"The findings of fact made by the administrative committee as to the charge contained in count No. 2 of the amended accusation are approved, with the exception of the finding that 'The respondent, W. N. Maben, knew at the time he presented said bond for approval that said bond was a forged instrument and that it was worthless.' In our opinion the evidence is insufficient to sustain that finding, but notwithstanding our inability to approve that finding, we approve the conclusion reached by the administrative committee as to the guilt of the respondent and the recommenda-

tion that the respondent should be disbarred. as the other facts found by the administrative committee are amply supported by the evidence.

"Upon a consideration of the entire record, the Board of Governors makes the following

"Findings of Fact.

"That at all times referred to, the respondent was a duly enrolled member of the bar of the Supreme Court of the state of Oklahoma, and since the effective date of the State Bar Act, has been, and is now, a member of the State Bar of Oklahoma.

"(2) That at all times referred to, he was a citizen and resident of Tulsa county, Okla.

"(3) That on or about the 13th and 14th of March, 1931, the respondent, as one of the attorneys for one Bill Armstrong in the case of State of Oklahoma v. Bill Armstrong et al., case No. 1369, in the superior court of Pottawatomie county, Oklahoma, presented to the county attorney. the court clerk and judge of the superior court of Pottawatomie county, Oklahoma, an appeal bond in said case of State of Oklahoma v. Bill Armstrong, for the purpose of having the same approved and filed in said case in order to procure the release of said Bill Armstrong, pending an appeal from a sentence of 25 years, which had been imposed upon the said Bill Armstrong in said case. The bond which was presented purported to have been signed by M. J. McSoud, Frank Mike, F. E. Mahan, and Emma S. Humphries. Attached to said bond was a purported affidavit of qualification of Frank Mike and M. J. McSoud, in which it was stated that said Frank Mike and M. J. McSoud were worth $50,000 over and above all exemptions, and in which certain real estate in Bristow, Oklahoma, was described as being owned by said parties. The bond was a forgery in that Frank Mike and M. J. McSoud, whose names appeared as sureties on said bond, did not in fact sign the same. At the time the bond was presented by the respondent to the above-named officials of Pottawatomie county, Oklahoma, the respondent, in his capacity as a member of the Bar of the State of Oklahoma, represented and stated to said officials, and each of them, that he personally knew the sureties who had signed said bond, and that said bond was a good bond. The judge of the superior court and the court clerk relied on the representations and statements of the accused, and the bond was approved and filed, and the said Bill Armstrong was released from the state penitentiary. The accused, in testifying before the administrative committee, denied that he made said statements to the officials of Pottawatomie county, Oklahoma, and fur-

ther testified that he did not know the sureties on the bond; that he had never seen McSoud and Mike before the appearance of said parties at the first hearing held by the administrative committee in said case, and that he had made no investigation of the sufficiency or validity of the bond before it was presented to the officials for approval. We further find that the accused not only made the statements and representations relative to said bond to the officials of Pottawatomie county, when he knew that the execution of the bond had been procured by one Earl Everidge, a professional bondsman, who had previously entered a plea of guilty in the United States District Court for the Northern District of Oklahoma to a charge of conspiracy to deceive the government in connection with an appearance bond in a criminal case, and that the said Earl Everidge had previously been convicted in the district court of Tulsa county, Oklahoma, on a charge of forgery of a bond. The accused represented Everidge in the case in the United States District Court and also represented him upon a petition for rehearing in the Criminal Court of Appeals.

"Conclusions of Law.

"1. That the respondent, W. N. Maben, has been guilty of the violation of the oath taken by him upon his admission to the Bar of the State of Oklahoma, and has been guilty of a wilful violation of his duties as an attorney (sec. 4106, C. O. S. 1921); and that his course of conduct renders him an unfit, unsafe, and untrustworthy person to be entrusted with the powers, responsibilities, and duties of an attorney and counselor at law.

"2. That the respondent should be disbarred and his license to practice law in the state of Oklahoma revoked."

It is noted that the Board of Governors specifically disapproved the finding of the committee that respondent knew that the bond was forged at the time he presented it for approval.

The Board of Governors evidently adopted the attitude that respondent, being fully advised of the character of Earl Everidge and being fully advised of his propensities in attaching other people's names to important papers, should have made an investigation of said bond before he submitted it for the court's approval and recommended it as a good bond. Therefore, the charge against respondent involves an act of omission rather than an act of commission. Notwithstanding the fact that a vicious fraud was perpetrated upon the court, the penalty recommended by the Board of Governors is not warranted by its own findings of fact.

In the case of In re Sitton, 72 Okla. 13, 177 P. 555, it is said:

"The lawyer's life must be one of fidelity and stern integrity. There is no place at the bar for the unscrupulous, and the cheeks of the lawyer, who besmirches his profession, should be made to burn with shame; but disbarment means professional excommunication and death, and should be resorted to only when it is apparent that the interest of the community, the integrity of the courts, or the honor of the profession, imperatively demands it."

In the case of State v. Cutlip, 83 Okla. 183, 202 P. 782, it is said:

"In an action to disbar an attorney his guilt must be clearly proven, although the proceeding is a civil action."

In this case the action of respondent in appearing before the court, vouching for the validity of an obligation which had been handed to him by a person who might be described as an underworld character— said respondent being fully advised as to the character and reputation of said person—without making some investigation into the validity of the obligation, indicates a lack of care and discretion entirely out of keeping with the high office of an attorney and counselor at law. By far the great majority of the members of the bar take great pride in the general attitude of the courts that "a lawyer's word is his bond," and it should be so. The honor and integrity of the profession should be carefully and safely preserved. A careless and indiscreet act, such as committed by respondent herein, will do more to tear down and disrupt public confidence in the profession than can be built up by the upright and honorable members of the profession over a long period of time. The Board of Governors was of the opinion that the conduct of respondent constituted such gross and inexcusable negligence and such flagrant disregard of his high duty as an attorney and counselor at law as to merit the severest penalty, that is, disbarment. This would be so, if it were not for the fact that all through our system of jurisprudence runs the principle of law and justice that no man's personal or property rights shall be taken from him except upon clear and convincing proof. The financial responsibility of the sureties was not seriously questioned before the Board of Governors. The respondent no doubt insisted that the bond was a good bond; but when the Board of Governors found that he did not know that the signatures of said sureties were forgeries, said board negatived thereby the bad faith of respond-

ent in presenting said bond and in making said improper representations. The attempt to connect respondent with Earl Everidge is too inconclusive and remote. We do not say that under some circumstances an act or acts of omission would not constitute an offense which merits disbarment, but in connection therewith, there should be positive proof of bad faith.

In spite of the gravity of the charge, the findings of the Board of Governors do not overcome the presumption of good faith on the part of respondent. For such insufficiency in the findings of fact of said board the recommendation of the Board of Governors is disapproved.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, and McNEILL, JJ., concur. ANDREWS, BAYLESS, BUSBY, and WELCH, JJ., absent.