## HAUNSTEIN v. STATE BAR OF OKLAHOMA.

No. 25005. June 18, 1935.

F. E. Chappell, for plaintiff in error.

John Adams, for defendant in error.

CORN, J. This is an action to review disbarment proceedings against Paul R. Haunstein had before the Board of Governors of the State Bar of Oklahoma, wherein disbarment was recommended.

The complaint was first filed before the administrative committee of section 20 of the State Bar by Levi McCalister, a resident of Kingfisher county, and the charges were investigated by said committee and the committee reported to the Board of Governors recommending dismissal of the complaint. Later a new complaint covering the same charge was filed by the said Levi McCalister with the Board of Governors, and said board referred the matter to Hon. F. B. H. Spellman, one of its members, who held hearings upon the complaint, and submitted his findings of fact, together with a complete transcript of the record of said hearing, to the Board of Governors, before whom oral arguments were heard. The Board of Governors thereupon also made findings of

fact, conclusions of law, and recommendations. The accused filed herein his petition for a review of said proceedings.

The complaint grew out of a controversy between Haunstein and McCalister over an attorney's fee charged by Haunstein for representing McCalister in a bankruptcy proceeding. The facts as disclosed by the record show that McCalister, who possessed considerable property, both real and personal, above his lawful exemptions, undertook to evade the payment of a judgment in favor of one Ella Hubbard upon which an execution had been issued, and in order to do so filed a voluntary petition in bankruptcy. He employed Paul R. Haunstein, an attorney at Enid, to represent him in the proceedings and paid him a fee of $150 for his services.

Without the knowledge of his attorney, McCalister made false schedules of his property and also listed certain bogus creditors' claims in favor of his relatives, and transferred and secreted assets to defraud his creditors. T. R. Blaine, attorney for the judgment creditor, discovered the fraud, and at the meeting of creditors before the referee in bankruptcy gave McCalister a very severe examination, in which McCalister gave conflicting testimony regarding his property and particularly in regard to a certain property in Enid, which he had recently transferred to his wife and son, claiming that the property was purchased with funds belonging to them. The referee was not satisfied with the testimony and continued the hearing and appointed a trustee and ordered a thorough investigation. Haunstein, discovering what his client had done, arranged a meeting with him at the office of Lee Gray in the town of Hennessey. Mr. Gray had been McCalister's attorney for several years, and they discussed the matter with Mr. Gray, and Gray informed McCalister that it would be necessary for him to establish proof at the next hearing in regard to the Enid property. McCalister made a trip to Nebraska for a conference with his son and brought back a canceled express receipt and a letter purporting to have been written several years previously to prove his statements as to how he received the money which he claimed his son advanced to purchase the Enid property. Haunstein doubted the genuineness of this evidence and again took his client to Gray's office to go over the matter with him. The express receipt and letter showed upon their face that they were bogus and Mr.

Gray advised McCalister that he would get himself and his son into serious trouble if he attempted to deceive the court with such evidence, and McCalister admitted that they were bogus, and also admitted that he had made out some notes to relatives and listed them as claims in the bankruptcy matter and that those claims were false.

At this time, Haunstein informed McCalister that he would not represent him in the matter any longer, but was withdrawing from the case. McCalister insisted that Haunstein stay with him and get him out of his difficulty. Blaine had told Gray that he had evidence against McCalister to prove several criminal offenses against the federal statute and that when he collected his judgment he intended to turn the evidence over to the U. S. district attorney's office. Gray had told McCalister and Haunstein the threat Blaine had made and McCalister feared criminal prosecution. Finally Haunstein agreed to continue to represent him on condition that he pay the judgment and go no further with the bankruptcy proceedings. Haunstein proposed that McCalister give him $3,500, and he would settle the Hubbard judgment in the sum of $1,150, that being the only bona fide claim filed against the bankrupt estate, and that the balance of the money was to be Haunstein's attorney fee for procuring a dismissal of the bankruptcy proceedings and for defending McCalister on any criminal charges which might be filed against him in connection with the bankruptcy matter. McCalister agreed to the proposition and borrowed $3,500, giving a mortgage on the farm to secure the debt, and gave the money to Haunstein, who settled the judgment, procured waivers of the bogus claims, and made a proper showing that all creditors were satisfied and procured a vacation of the order adjudicating McCalister a bankrupt, and finally the dismissal of the proceedings.

After determining that no criminal charges were likely to be filed against him, McCalister asked Haunstein for a refund of a part of the attorney's fee which he had paid him, and Haunstein refused to make any adjustment of the fee. McCalister filed a civil action in the district court of Garfield county to recover all of the fee, claiming that the money was entrusted to Haunstein to pay all listed claims in the bankruptcy matter and if any remained after paying same it was to be returned to him, but that Haunstein had converted the same to his own use. This was the basis of his complaint before the State Bar.

At the trial of the civil action Haunstein proved his contract with McCalister for the attorney fee and the jury found 'in favor of Haunstein, but, under a quantum meruit instruction by the court, allowed him only about half of the fee charged, and rendered judgment for McCalister in the sum of $1,-259.15. The court rendered judgment according to the verdict, and Haunstein appealed therefrom to this court. The record of civil case was received in evidence at the trial of the disbarment proceedings before the Board of Governors and 'is a part of the record in this case.

The petitioner presents his case under four different propositions attacking the findings, conclusions of law, and recommendations of the Board of Governors on grounds of procedural irregularities in the disbarment proceedings. We deem it unnecessary to a proper determination of the matter to discuss in the opinion all the questions raised by petitioner. It is contended by petitioner that the judgment in the district court of Garfield county in the civil action between Levi McCalister, as plaintiff, and Paul R. Haunstein, as defendant, involving the same ground of complaint as involved herein, is binding and conclusive as against Levi McCalister and the Board of Governors of the State Bar, so long as the judgment remains unreversed and unmodified, and that the Board of Governors were without authority to disregard said judgment.

The jury having found in the civil case that Haunstein had not misapplied the funds of his client as charged, but that said money was paid to him by McCalister as a fee for services to be rendered, and the same being case No. 23970, appealed to this court, and the judgment of the trial court being affirmed by an opinion rendered on this day, disposes of the ground of complaint in the disbarment proceedings. Haunstein v. McCalister, 172 Ok'a. 613, 46 P. (2d) 552.

Moreover, the findings of fact of the advisory committee, of Mr. Spellman, referee of the Board of Governors, and of the Board of Governors all find that the contract was made between Haunstein and McCalister for the fee in question. However, the Board of Governors criticizes the taking of a large fee from the complainant when he was under fear of criminal prosecution, the retaining of which they regarded as a violation of his oath of office as an attorney at law, and his duties as an attorney and counselor, and that the commission of such act renders him an unfit, unsafe, and untrustworthy person to be entrusted with the powers, duties, and responsibilities of an attorney and counselor at law, and that he should be disbarred.

The findings of fact, conclusions of law, and recommendations of the local advisory committee or the Board of Governors of the State Bar of Oklahoma are merely advisory and recommendatory in character and are not binding upon the Supreme Court, although they carry weighty presumptions of justice and propriety. See In re Stafford (Cal.) 284 P. 670; In re Shattuck (Cal.) 279 P. 998; In re Rosenbaum (Pa.) 150 Atl. 748; In re Dick, 166 Okla. 114, 26 P. (2d) 412.

As a rule, findings of fact, conclusions of law, and recommendations of the local advisory committee or the Board of Governors of the State Bar of Oklahoma, which are found to be contrary to or inconsistent with a valid judgment of a court of competent jurisdiction of this state adjudicating the same questions of law or fact, will be disregarded by the Supreme Court on review of disbarment proceedings in so far as they are contrary to or inconsistent therewith.

Where it clearly appears that the attorney has not been guilty of any fraud or deception towards his client,. the fact that a controversy arises between them in regard to the fee charged for the services is not of itself a ground for disbarment.

There is no evidence in the record that the respondent did anything to create fear in the mind of the complainant of criminal prosecution 'in order to get the fee in question. The complainant was not a young and inexperienced man. The member of the Board of Governors who presided at the hearing made the following observations in his findings of fact:

"* * * It is very clear that the complainant is not an ignorant, unversed man—that the complainant is a very scheming, cold, calculating individual; that he withdrew his money from the bank in Hennessey and placed it in his wife's name; that he had money buried on his place and at the time he was making his schedule in the office of the respondent he had money on his person, yet was paying the respondent with a check written on his wife's account; that he was very anxious to defeat the judgment which he justly owed and had so long evaded, and that the complainant knew when he gave the respondent $3,500 on November 5, 1929, that even though all the claims listed in his schedule were valid claims, that it would not take to exceed $1 600 to pay them, and

would leave a remainder of $1,900 in the hands of the respondent. * * *"

It is obvious that the complainant and the respondent stood on an equal footing when the contract was made, and respondent contends that complainant was a troublesome client and that he more than earned his fee in getting him out of his difficulty and closing the bankruptcy proceedings.

Although this court affirmed the judgment in the civil action wherein judgment was rendered against the respondent for $1,259.15, on the ground that at the time the contract was made the relation of attorney and client existed and that where the contract was to the advantage of the attorney it was presumptively fraudulent, yet, under the circumstances in the case, we are not convinced that actual fraud was practiced by the respondent in making the contract; and even though it does appear to be excessive for the services actually rendered in the case, we do not regard this fact alone, where it is shown that the respondent bears a good reputation for honesty and upright dealing in the community in which he lives, as sufficient to justify disbarment.

. In order to justify disbarment, not only must the acts of misconduct be proved by clear and convincing testimony, but fraudulent and dishonest motives must likewise be satisfactorily proved. It is not sufficient to justify disbarment that the evidence, taken as a whole, shows a state of facts discreditable to the respondent. If the evidence, taken as a whole, fails to satisfactorily show that the respondent has been guilty of dishonorable conduct, the charges cannot be sustained. People ex rel. Chicago Bar Ass'n v. Lotterman et al. (Ill.) 187 N. E. 424; In re Hadwiger et al., 167 Okla. 307, 27 P. (2d) 604.

The conduct of the complainant throughout all the transactions coming to our attention through the record in both cases is not such as would inspire confidence, and his testimony was so conflicting as to render it of little value.

The respondent produced witnesses at the trial of the disbarment case to testify as to his reputation for honesty and fair dealing in the vicinity of Enid, where he lives and conducts his law practice. A client for whom he had handled a great volume of business testified that he had found him honest and fair in all his dealing with him. Two bankers in Enid testified that his reputation for honesty and fair dealing in that vicinity was good.

From our study of the records in these cases we are impressed with the straightforward conduct of the respondent in representing his client. He refused to countenance the dishonesty of his client or to become a party to practicing fraud and deception upon the court; and in fact demanded that his client make settlement of his honest obligations and withdraw the bankruptcy proceedings.

The respondent is a comparatively young man, having practiced law about 15 years, and we are not convinced from the evidence in this case that he is a person of such character as to be unfit, unsafe, and untrustworthy to be entrusted with the powers, duties, and responsibilities of an attorney and counselor at law.

The complaint is, therefore, dismissed.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur. RILEY and BAYLESS, JJ., dissent. WELCH, J., absent.