STATE ex rel. OKLAHOMA BAR
ASS'N v. HATCHER et al.

S. C. B. D. No. 892.   July 19, 1949.
Rehearing Denied Sept. 13, 1949.

*209 P. 2d 873.*

V. P. Crowe, Chas. H. Garnett, Jack
Durland, Don Dow, and Homer L. Hurt,
all of Oklahoma City, for complainant.

Rex Belisle and Draper Grigsby, both
of Oklahoma City, for respondent Ben
N. Hatcher.

Ross N. Lillard and Rex Belisle, both
of Oklahoma City, for respondent O.
E. Hatcher.

Paul Pugh, of Oklahoma City, and
James A. Rinehart, of El Reno, for
respondent George D. Davis.

PER CURIAM. This action involves a review by this court of proceedings instituted by the Executive Council or Central Committee of the Oklahoma Bar Association, wherein charges of professional misconduct were filed against Ben N. Hatcher, O. E. Hatcher, and George D. Davis, all members of the Oklahoma Bar Association from Oklahoma County, as provided by the Rules Creating, Controlling and Regulating the Oklahoma Bar Association, as reported in the Oklahoma Bar Journal, vol, 18, No. 8, page 240, on February 22, 1947. The charges were filed in this court by the Executive Council on September 9, 1948. A referee and prosecutor were appointed to conduct a full hearing. At the completion of the hearing before the referee, he filed a report of his findings and recommended that the respondents be suspended for a period of five years. The Executive Council reviewed the report of the referee and filed a report and recommendation that each of the respondents be disbarred. A duly certified transcript of the proceedings, including the testimony taken before the referee, together with the report of the referee and his recommendations, and the report of the Executive Council and its recommendations, was filed in this court. Each of the respondents filed petitions requesting this court to review the record and dismiss the charges and deny the recommendations of the referee and of the Executive Council. Well-prepared briefs have been filed by the attorneys for complainant and for the respondents.

Paragraph 9 of article VI of the Rules above mentioned provides that this court shall review the record and enter an appropriate order approving, denying, modifying or amending the recommendations of the Executive Council, and that the burden of proof shall be upon respondents to show wherein the recommendations of the Executive Council are erroneous, unlawful or unjustified.

The respondents Ben N. Hatcher and O. E. Hatcher rely upon five identical propositions for a denial of the recommendations of the referee and the Executive Council. The respondent George D. Davis has set up four propositions which cover the contentions of the other respondents, except that he does not complain of the proceedings wherein there was a change made in the personnel of Grievance Committee 7A, which was requested to investigate the charges against the respondents.

Under paragraph 3 of article VI of the Rules of the Oklahoma Bar Association, a grievance committee of three attorneys of the Oklahoma County Judicial District had been appointed by the Executive Council, designated Committee No. 7A, and eleven charges against respondents were referred to this committee for investigation. The paragraph of the Rules last mentioned provides for the appointment of such committee, to whom all charges of professional misconduct shall be referred, or such charges as may be brought to the attention of the Executive Council in the form of an affidavit. It is also provided that the attorneys involved shall be given an opportunity to appear and explain or refute the charges being investigated by the grievance committee. The grievance committee of three members had referred to it for investigation what is referred to as the original complaint, consisting of nine specific acts of misconduct, and charges 10 and 11, which were general in nature. Respondents were notified to appear before the committee, and did appear and discussed the charges with the committee. Mr. Ben N. Hatcher testified that he understood the chairman of the committee to say that there was nothing to the charges, and that he thought the charges had been dismissed. For some reason, unaccounted for in the record, this committee took no action whatever upon the charges.

The Rules further provide that upon receiving the report of a grievance committee, "the Executive Council or Central Committee may direct a further investigation, or may direct that

no charge be filed against such attorney." This provision clearly indicates that the Executive Council may direct a further investigation upon receiving the report of a grievance committee, regardless of its nature, and certainly such authority would exist in the event no report is made by the grievance committee.

Upon the failure of the grievance committee first appointed to file any report, the Executive Council appointed new personnel for the same grievance committee, and referred to it the same complaint, consisting of eleven charges of unethical conduct, that had been referred to the grievance committee of three members.

There is no provision made for any limited time or term for grievance committees. We think it must follow that a grievance committee holds at the pleasure of the appointing authority, and that the Executive Council had full authority to appoint a new committee, or new personnel on the same committee, and to order further investigation of the same charges referred to the committee when composed of three members. Since the Executive Council had full authority to direct further investigation, even after a grievance committee had filed a report and made a recommendation, then certainly it had authority to direct further investigation at a stage of the proceedings when a grievance committee had failed to file any report or to make any recommendation.

We find no merit in the contention of respondents that the eleven charges contained in the original complaint should be considered fully disposed of, because they were submitted to a grievance committee before which respondents appeared, resulting in no report and no recommendation.

In order to understand fully the second proposition advanced, which claims that the 27 specific charges set out in what is referred to as the "Bill of Particulars" should not be considered, but should be dismissed because not based upon affidavits when the bill of particulars was filed, and because respondents did not have an opportunity to be heard upon these particular charges before the grievance committee, and explain or refute them, as provided in paragraph 3, article VI of the Rules above referred to, it is necessary to outline briefly the procedure as to all the charges filed in this matter.

The original complaint, referred to the grievance committee of three, contained eleven charges. The first nine charges were specific and set out nine definite statements of alleged unethical professional conduct on the part of respondents.

Charge No. 10 was general in its nature, and alleged that respondents "have, as a definite plan, system, and established practice, personally and by and through 'runners', whose names are not known to the complainant, solicited professional employment to represent numerous and divers persons, whose names are likewise unknown to complainant, in the prosecution of their claims against their employers before the Industrial Commission of Oklahoma. . . ."

Charge No. 11 alleged respondents ". . . have and are, by the acts, deeds, matters and things hereinabove set forth, and by other acts, deeds, matters and things done or engaged in at different times and places in the State of Oklahoma, engaged in a reprehensible course of conduct, which tends to bring the legal profession into disrepute, thwart the administration of justice, lower the standards of lawyers generally throughout the State of Oklahoma, . . ."

The eleven charges set out in the original complaint were before the grievance committee of three, before whom respondents admit that they appeared to explain or refute the charges. Mr. Ben N. Hatcher testified that all respondents also appeared before the grievance committee after its personnel had been changed, and that

their attorneys also appeared. The record shows no objections to charges 10 and 11 before either grievance committee.

These same eleven charges were filed with the Clerk of this court on September 9, 1947, together with the request that a referee and prosecutor be appointed to conduct a full hearing. After the referee was appointed, the matter was first set for hearing on November 10, 1947. By consent of the parties, the matter was postponed to December 8, 1947, then to January 12, 1948, and finally to February 26, 1948. On the latter date, when the hearing before the referee was about to begin, the respondents, Ben N. Hatcher and O. E. Hatcher, filed a response denying the first nine charges, and moved that the tenth and eleventh charges be stricken as indefinite, uncertain, and insufficient to put respondents on notice as to the charges contained therein. The respondent George D. Davis filed a motion for a bill of particulars as to charges 10 and 11.

These are the first objections shown by the record to have been made to charges 10 and 11 by the respondents, and they contain no objections based upon the lack of affidavits to support any of the eleven charges in the original complaint.

The attorney for the Bar Association immediately furnished respondents with copies of a bill of particulars, setting out 27 specific charges of professional misconduct. Respondent George D. Davis, on March 18, 1948, filed a notice to produce thirteen affidavits upon which charges against him had been based. All respondents objected to proceeding without an opportunity to prepare to meet the specific charges set out in the bill of particulars. The referee reminded respondents that they had requested the bill of particulars only a few minutes before, and that he would proceed to hear the testimony of the witnesses present and would give respondents ample opportunity to investigate and meet the charges. It appears that complainant obtained affidavits in support of the charges contained in the bill of particulars subsequent to February 26, 1948, and that respondents also undertook to secure counter-affidavits from the same witnesses.

The hearings before the referee were continued until March 24, 1948, on which date the complainant produced, over the objections of respondents, affidavits in support of the charges in the bill of particulars. The original complaint of eleven charges had been in the hands of respondents at least since September, 1947, and it was only on February 26, 1948, that they first complained of charges 10 and 11 in the original complaint. We note that on page 51 of the brief of respondent George D. Davis, it is stated that "all of the charges contained in the bill of particulars have affidavits, but the affidavits were made long after the hearings before the grievance committee."

While the affidavits were introduced at the close of the hearing before the referee, they are not found in the record before us. The contention of the respondents is that no charge shall be referred to a grievance committee unless supported by or founded upon affidavit. Complainant contends for a different interpretation of the provision of paragraph 3, article VI of the Rules above mentioned, which says that the Executive Council "shall provide, through grievance committees, for the investigation of all complaints of professional misconduct that may be brought to its attention in the form of affidavits. . . ." Article VI, paragraph 3 of the Rules also provides that the Executive Council or Central Committee "shall provide for giving the attorney involved an opportunity to explain or refute the charge." Whether this requirement is strictly applicable to the investigation by the grievance committee, or is sufficiently met when respondents are given a complete hearing before a referee, is a question not heretofore passed upon by this court. While we are inclined to the view that it

was intended that the accused attorney should have an opportunity to appear before the grievance committee on each charge filed, we believe that the rules have been sufficiently complied with here by reason of the fact that respondents did have an opportunity to appear before the grievance committee on two occasions while certain charges of soliciting legal business were being investigated, and that they made no objections to charges 10 and 11 of the original complaint until the hearing was about to begin before the referee on February 26, 1948, and had ample opportunity to explain or refute every charge made. The eleven charges contained in the original complaint had been in their hands for more than five months before any objections were made to charges 10 and 11.

Under the principle announced by this court in Kurn v. Radencic, 193 Okla. 126, 141 P. 2d 580, we are of the opinion that evidence of other similar acts by respondents to those contained in the bill of particulars would have been admissible under charges 10 and 11, had no bill of particulars been filed. The rule is announced in that case as follows:

"Generally, when knowledge and intent of the party is a material fact, proof of other similar acts is admissible as an exception to the general rule excluding proof of such collateral matters."

It has been generally held that in disbarment proceedings, technical rules should not govern. We quote here some announcements upon this subject by other courts, as follows:

"The court's jurisdiction over attorneys is to be exercised according to law and conscience and not by any technical rules." Richardson v. State, 141 Fla. 218, 192 So. 876.

"Disbarment proceedings being in the nature of an inquiry for the protection of the courts, the public, and the profession, strict rules of procedure should be relaxed to the end that the fitness of an attorney to continue in the profession should be determined on the merits rather than on less worthy grounds." In re Pate, 232 Mo. App. 478, 119 S. W. (2d) 11.

"In proceedings to disbar an attorney mere forms not affecting its merits should not stand in the way of protecting the court and public by appropriate action after a full hearing." In re Williams, 180 Md. 689, 23 Atl. 2d 7.

"A 'disbarment proceeding' is an investigation of the conduct of a member of the bar to determine whether he shall be disbarred or disciplined and is not a lawsuit with the formalities of common-law pleading and judgment so that technical legal defenses cannot be called upon to aid in response to the charge." In re Doss, 367 Ill. 570, 12 N.E. 2d 659.

In the case of In re Keenan, 313 Mass. 186, 47 N.E. 2d 12, the court had under consideration the prerogatives of the court in connection with disbarment proceedings, and we quote the 13th, 15th, and 19th paragraphs of the syllabus from that decision:

(Syl. 13) "The court under inherent power to control conduct of its own affairs and to maintain its own dignity, has summary jurisdiction to deal with the alleged misconduct of an attorney."

(Syl. 15) "Procedural requirements applicable to ordinary actions at law even though statutory are not applicable to disbarment proceedings."

(Syl. 19) "In disbarment proceedings, procedure applicable to actions at law, whether established by statute or by judicial decision, must be followed only so far as such procedure is appropriate for such proceedings."

Since the specific charges contained in the original complaint were sustained as to each respondent, we find that respondents have no just grounds to complain because the bill of particulars was not filed well in advance of the hearing before the referee and was not previously supported by affidavits. We further find that the testimony admitted sustains a large number of the specific charges set out in the bill of particulars.

We find no merit in the contention set out in proposition three of the respondent George D. Davis that the charges in the complaint and the bill of particulars are not sufficiently definite to constitute charges worthy of consideration.

It is claimed that the findings of the referee are contrary to the evidence, and that the recommendations of the referee are cruel and unjust, and not supported by the decisions of this or any other court. We held in the case of In re Durham, 190 Okla. 588, 126 P. 2d 69, that the solicitation of legal business personally and through paid agents, by an attorney at law, was ground for disbarment.

There is no question but that, in an action to disbar an attorney, his guilt must be clearly proved. In re Cutlip, 83 Okla. 183, 202 P. 782; In re Maben, 167 Okla. 111, 27 P. 2d 601; Haunstein v. State Bar of Oklahoma, 172 Okla. 610, 46 P. 2d 558.

A careful reading of the testimony convinces us that the findings of the referee are clearly supported by the evidence as to each respondent. In every instance of a doubtful nature, the referee gave the benefit of the doubt to the respondents. The evidence shows that the respondents were so closely associated in the practice of law that each was bound to know of the methods by which they were securing some of their legal business. There is convincing proof that each one solicited business, and that so-called "runners" solicited business for each of them. Ben N. Hatcher testified that in a comparatively few years, his firm had handled from 3,500 to 4,000 cases, mostly Industrial Compensation cases, which in itself would indicate solicitation where unusual ability was not shown.

It is true, and to the credit of respondents, that there is no evidence of dishonesty in the handling of business entrusted to them; yet their conduct in soliciting business and having same solicited is clearly against the ethics of the legal profession. These respondents grossly misconceived the dignity of their profession and the upright conduct required of its members, and, as a result, a bereaved widow residing at Comanche, Okla., was sought out at midnight and the case against her husband's employer solicited; at Shawnee, Okla., an injured employee was solicited at his home by complete strangers; and a widow residing at Davis, Okla., was solicited shortly after her husband had been killed in a railroad accident. Such conduct on the part of attorneys is certain to bring the legal profession into disrepute. The supervisor of an injured party residing at Shawnee wrote to one of the respondents and inquired if his conduct in soliciting legal business in Shawnee was in accord with the ethics of the legal profession in Oklahoma. The father of the widow at Davis was handed a business card of one of the respondents, and immediately wrote thereon the license number of the car in which the attorneys had arrived. He testified in the following language as to his reason for taking the license number:

"Well, they just seemed like they wanted to push themselves on us to take a job. I didn't want an attorney—if I had, I would call one."

The conduct of respondents, as disclosed by the record, covers a wide area of the state, and if approved or permitted to continue would break down the barriers set up and maintained through the centuries by the unceasing efforts of conscientious lawyers to protect an ancient and honorable profession from the assaults of commercialism.

It is a far from pleasant duty for a grievance committee, the attorneys for the Bar Association, the Executive Council, the referee, and the members of this court, to enforce any character of disciplinary penalty upon a fellow member of the bar. The Executive Council, the referee, the prosecuting attorneys, and the attorneys for respondents are to be commended upon their

efficient performance of an unpleasant duty. The Executive Council has recommended disbarment, but since this is probably the first case involving solicitation alone, we believe that the respondents should be suspended indefinitely from the practice of law, with the right, at the end of three years, to apply for reinstatement upon satisfactory proof that they have not practiced law either directly or indirectly, and have otherwise deported themselves properly. See In re McDonald, 204 Minn. 61, 282 N.W. 677.

It is therefore ordered that respondents Ben N. Hatcher, O. E. Hatcher, and George D. Davis be and they are hereby suspended from the practice of law in the State of Oklahoma indefinitely; and it is further provided that respondents may apply for reinstatement after three years from the date this judgment becomes final, upon proper showing as hereinabove set out.

All the Justices concur.

Rehearing Denied Sept. 13, 1949.