STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Frank MASSAD, Respondent.

No. 1661.

Supreme Court of Oklahoma.

Dec. 16, 1958.

Rehearing Denied Jan. 10, 1959.

Russell V. Johnson, Charles E. Dierker, Oklahoma City, for complainant.

B. H. Carey, Sam S. Gill, Oklahoma City, for respondent.

PER CURIAM.

This is a disbarment action by the State of Oklahoma ex rel. the Oklahoma Bar Association, herein called complainant, against Frank Massad, here referred to as respondent. Charges of professional misconduct on the part of respondent were filed. These charges were investigated by Grievance Committee No. 7–B, and its findings and recommendation were duly made to the Central Committee of the Oklahoma Bar Association. This Committee made its report, findings and recommendation to this Court on September 4, 1957, wherein the respondent was found guilty of charges one and two of complaint. The evidence was determined to be insufficient to support charges three to eight, inclusive.

The Grievance Committee reported that two of its three members recommended that respondent be suspended for a period of four years, while one member recommended that he be disbarred.

The Central Committee recommended that because of the professional misconduct set out in counts one and two that respondent be disbarred from the practice of law in Oklahoma, his license cancelled and his name stricken from the roll of membership in the Oklahoma Bar Association.

On September 18, 1957, the respondent by petition in error, appealed to this Court to review, vacate, deny and modify the report, findings and recommendation of the Central Committee, adverse to respondent. This petition in error contains 16 counts, which will be considered herein. The delay in filing this matter in this Court

is explained by the long delay in securing a transcript of the evidence taken before the Grievance Committee, consisting of some 1200 pages. Respondent was duly notified of the hearing before the Grievance Committee and was present at all of its hearings, represented by Messrs. B. H. Carey and Sam S. Gill.

Since the Central Committee found the evidence insufficient to support charges three to eight, inclusive, and determined that they should be dismissed, we deem it only necessary to consider the evidence with respect to charges one and two, on which the Central Committee based its recommendation that respondent be disbarred.

■ It is the duty of this court to review all disciplinary actions instituted by the Oklahoma Bar Association through its various committees and to affirm, modify or reverse its findings and recommendations. This requires a careful review of all of the evidence submitted and all questions of applicable law submitted by complainant and respondent. Since our adoption of the Canons of Ethics of the American Bar Association this court has reviewed a number of cases with the view and purpose of preserving the dignity and honor of the legal profession, as well as protecting the reputation, rights and welfare of the attorney accused of violating the oath of office subscribed by him when admitted to the practice of law. In that oath each attorney swears " * * * that I will do no falsehood, or consent that any be done in court and if I know of any I will give knowledge to the judges of the court, or some of them, that it may be reformed * * *."

■ Charge No. 1 upon which the Central Committee based its recommendation that respondent be disbarred is as follows:

"That the said Frank Massad on or about the 20th day of May, 1954, while acting as attorney for one Orlow Metzer Jones who was charged with a violation of the law in the State of Oklahoma and which case was then pending before the Hon. Carl Traub, Judge of the Court of Common Pleas, Oklahoma County, Oklahoma, did perpetrate a fraud upon the said Court by causing the appearance and a plea of guilty in said Court by a person other than the real defendant in said action, all of which is in violation of the Respondent's oath of attorney and of Canons 15, 22, 29 and 32."

Canons 15, 22, 29 and 32 of the Canons of Ethics are too numerous to repeat in full, but No. 15 provides in part " * * * The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane * * *." Canon 22 emphasizes candor and fairness, while 29 and 32 stress the honor of the profession and the observance of the statutory law. Some of the witnesses appearing before the Grievance Committee were clearly hostile toward respondent and prejudiced against him. However, there were a number of witnesses who appeared to be entirely impartial and with no particular interest in the outcome of the proceedings Among the latter class are Granville Scan land, then county attorney, his assistant Hamill, the court clerk, the defendant Orlow Metzer Jones, the attorney, Funk, who appeared before Common Pleas Judge Traub, at the request and under the direction of Frank Massad, and entered a plea of guilty for the real defendant, Jones, who did not appear, but with Clarence Warren appearing as defendant Jones. The fraudulent substitution of Warren as defendant for Jones was on May 20, 1954.

Jones was arrested for drunk driving May 8, 1954, and placed in the Oklahoma County jail. Louis Horaney, a friend of both Jones and Massad, contacted Massad on May 9th and Massad secured Jones' release from jail, gave him $2.00 and instructed him to appear at Massad's office in the Leonhardt Building the next day. Jones appeared and was introduced by Massad to Charles E. Chilton, who officed with Massad, who instructed Chilton to

go to the courthouse and make bond for Jones. Bond was made and Jones was told by Massad to go back to work and not worry and that the cost to Jones would not be over $200 or $250.

Jones testified that May 15th, he saw Massad at the Spa, a club in Midwest City, operated by Horaney, and was told by Massad that he, Jones, was in more trouble than he thought, because Jones had laid down 90 feet of skid marks, requiring some money to get Jones out of trouble, suggesting that Jones start trying to raise $850. Respondent called Jones May 19th and arranged another meeting at the Spa, where respondent inquired if Jones had raised the money and suggested that Jones try to borrow it from Horaney. Jones refused to do this but phoned his banker at Stillwater in an effort to borrow $850.

On the evening of May 20, 1954, Jones and Massad met again at the Spa. On this date Clarence Warren had appeared before Judge Traub, Common Pleas Judge, as the defendant Jones and a plea of guilty was entered for being drunk in a public place and a fine of $25.00 and costs were paid.

When respondent and Jones met on the evening of May 20, 1954, respondent stated that he was in an awful mess and that Jones was out, showing Jones the receipt for fine and costs in State v. Jones. Jones did not appear in court that day, and respondent told Jones he might get by with $500.00 and needed it. They met at the Spa again May 21, 1954, and respondent told Jones to "just forget that I am your attorney", and "as far as I am concerned I didn't ever represent you." It was then that Jones learned that an investigation was under way to determine who had appeared in court in Jones' place on May 20, 1954.

Massad took Jones to the office of the County Attorney May 22, 1954, and instructed him to stick to the story agreed upon the previous night that Massad was not Jones' attorney.

Respondent and Clarence Warren, who appeared before Judge Traub and plead guilty as Jones, had known each other and had dealings for four or five months previous to May 20, 1954, and respondent had represented Warren in a hot check case. When Warren went to respondent's office on May 20, 1954, he was introduced to Red Andrews as Mr. Jones, by respondent and given a card which bore the name of Orlow Metzer Jones, and respondent told Warren that he was to be Mr. Jones and to not forget it. He then instructed Warren to go to the courthouse with Red Andrews, who was told by the assistant county attorney that Massad, Jones'. attorney of record, would have to appear. They returned to Massad's office where Massad had arranged with an attorney named Funk to appear as the attorney for Jones. Warren posed as Jones and a plea of guilty was entered. Upon their return to respondent's office Red Andrews patted Warren on the back and said to Massad "This Jones is all right."

W. L. Funk officed in the same building as the respondent and on May 20, 1954, respondent came to his office, introduced Funk to Red Andrews and asked Funk to do him a favor, by going to the courthouse and enter a plea of guilty because respondent was tied up waiting for a telephone call. He had introduced Warren to Funk as the defendant or Mr. Jones.

The charge of drunk driving was reduced as per agreement to being drunk in a public place. Andrews handed the money for the fine and costs to Funk and upon their return to the respondent's office Andrews offered to him $10.00 but Massad did not have the change and told Andrews to keep the difference between $50.00 and $41.00 plus which paid the fine and costs.

Charles E. Chilton, an attorney who officed with respondent, was requested to go and make a bond for Jones on May 10, 1954, and on May 20, 1954, was asked if he had or could secure a friend who would appear in court as Jones and enter a plea of guilty in Common Pleas Court because

Jones was working at Tinker Field. Chilton declined and then Warren appeared and agreed to take the place of Jones.

Red Andrews testified that about May 18, 1954, respondent requested a favor of Andrews by helping a veteran who was in trouble; that he went to the county attorney and interceded for Orlow Metzer Jones and secured an agreement to reduce the charge of drunk driving to being drunk in a public place; that when he went to respondent's office May 20, 1954, he was introduced by Massad to a man called Jones, later learned by Andrews to be Clarence Warren; that when they went to the court room he paid the fine by money furnished him by respondent.

The name of respondent appeared on the docket of the Court· of Common Pleas as the attorney for the defendant, Orlow Metzer Jones, which accounts for the fact that when Red Andrews and Warren appeared in court to enter a plea of guilty for Jones, they were told that it would be necessary for Frank Massad to appear. When Warren and Andrews returned to Massad's office, he asked Mr. Funk to go in his stead on the ground that he was waiting for a phone call. He evidently phoned the court clerk to strike his name as attorney for Jones from the record. Most of the evidence offered by complainant was denied by respondent, but we are convinced from the evidence that respondent caused a phony defendant, Clarence Warren, to appear for the real defendant, Jones. Such conduct was deceitful and clearly amounted to a fraud upon the court which constitutes unethical conduct.

The record discloses that charge No. 2 complains that respondent in 1952 was representing a defendant named Jack Travis Sanders, charged with recklessly operating an aircraft. Respondent discussed the case with an assistant county attorney who agreed to recommend to the court a fine of $100 and costs. Respondent appeared at the office of the court clerk and advised a deputy clerk that he wanted to pay the Sanders' fine and advised the clerk he had talked to the county attorney and the judge

and that was okay. When Judge Crismore came in, respondent said it had been Judge Traub to whom he had talked. It was learned later that respondent had not discussed the case with Judge Traub. The respondent finally admitted "We didn't go before any judge. It is my fault."

After an investigation by a representative of the Oklahoma Bar Association, the Central Committee decided to take no disciplinary action and the matter was dismissed but respondent was warned that such conduct was unethical.

Respondent complains that since the charges made against him in the Sanders case, were dismissed, and had no relation to the charges in count No. 1, they should not be considered here. Respondent admitted that he was wrong in the Sanders case, but it was dismissed with a warning that his conduct there was not ethical.

■ While it is not discussed by either party, we find the Rules of the Oklahoma Bar Association, as amended to October 1, 1957, provide in Art. 6, par. 3, (5) (g), that if there is no appeal from a reprimand, the matter shall be kept confidential "but may be considered in any future complaints of subsequent acts of professional misconduct." See 5 O.S.Supp.1957 at p. 108. It seems to us that where a warning is given upon dismissal of a complaint, such matter may be considered later if other charges of professional misconduct are filed.

■ The respondent appears to have overlooked the established rule that a disciplinary action is a civil and not a criminal action, and that technical rules applicable to the trial of civil cases should not be strictly applied in disciplinary actions. In re Pate, 232 Mo.App. 478, 119 S.W.2d 11, we find this rule stated as follows:

"Disbarment proceeding being in the nature of an inquiry for the protection of the courts, the public and the profession, strict rules of procedure should be relaxed to the end that the fitness of an attorney to continue in the profession should be determined on the

merits rather than on less worthy grounds."

The Supreme Court of Illinois in In re Doss, 367 Ill. 570, 12 N.E.2d 659, 660, said:

"* * * A disbarment proceeding is an investigation of the conduct of a member of the bar for the purpose of determining whether he shall be disbarred or disciplined, and as the proceeding is not a lawsuit with the formalities of common-law pleading and judgment, technical legal defenses cannot be called upon to aid in response to the charge. * * *"

The above cases are cited with approval in State ex rel. Oklahoma Bar Ass'n v. Hatcher, 201 Okl. 683, 209 P.2d 873.

We find no merit in respondent's contention that charges against him are merely based upon information and belief. We find that the charges and evidence here establishes the guilt of respondent to such a certainty that they are sufficient.

There are some extenuating circumstances in favor of the respondent. He was in desperate financial circumstances and his experience in the practice of law was limited. But we cannot reach any other conclusion than that he perpetrated a fraud upon the court in substituting a friend as defendant in the Jones case as alleged in count one. We feel that it was not error for the court to take the charge in count two into consideration in determining what punishment should be recommended for the respondent.

We find no merit in the contention of respondent that the charges are insufficient because not signed by the Central Committee, but by the Executive Secretary of the Oklahoma Bar Association. Art. 7, Sec. 2 of the Rules provides that the Executive Secretary "* * * shall certify to the Supreme Court, records and other matters as provided herein * * *."

We find the respondent guilty of unethical conduct as charged in count No. 1 and he admitted that he made a mistake under the charge No. 2 in the Sanders case.

Respondent is suspended from the practice of law in the State of Oklahoma indefinitely. It is further provided that the respondent may apply for reinstatement four years after this judgment becomes final upon satisfactory proof that he has not practiced law in this State either directly or indirectly during that period and has otherwise deported himself properly.

CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS, BLACKBIRD and CARLILE, JJ., concur.

WELCH, C. J., and JACKSON, J., concur in result.